William M. COHEN, D.M.D., M.S., Greater St. Louis Periodontics, P.C., Plaintiff,

v.

IMPLANT INNOVATIONS, INC., d/b/a "3i," Defendant.

No. 07–20777–CIV.

United States District Court, S.D. Florida.

Aug. 21, 2008.

Craig Randall Zobel, Reid & Zobel, P.A. Post Office Drawer, West Palm Beach, FL, Douglas P. Dowd, Dowd & Dowd PC, St. Louis, MO, Fernando Bermudez, Joe D. Jacobson, Jonathan F. Andres, Martin M. Green, Green Jacobson & Butsch PC, Clayton, MO, for Plaintiff.

Benjamine Reid, Olga M. Vieira, Carlton Fields, Miami, FL, for Defendant.

*ORDER ADOPTING REPORT AND RECOMMENDATION (D.E.112); DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (D.E.60); AND DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT III OF PLAINTIFF'S COMPLAINT (D.E.54)*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on the Report and Recommendation issued by U.S. Magistrate Judge John J. O'Sullivan on June 13, 2008 ("Report," D.E. 112), recommending that the Motion for Class Certification filed by Plaintiff on December 7, 2008 ("Motion,"

D.E. 60) be denied in its entirety. On June 30, 2008, Plaintiff filed its Objections to the Report ("Objections," D.E. 116). On July 18, 2008, Defendant filed its response to Plaintiff's Objections ("Response to Plaintiff's Objections," D.E. 118). Having reviewed the Motion, the related pleadings, and the record *de novo*, the Court finds as follows:

## I. Procedural Background and Report

As the Magistrate Judge noted in the Report, Plaintiff William M. Cohen, D.M.D., M.S., Greater St. Louis Periodontics, P.C. ("Plaintiff")[1] filed a complaint against Defendant Implant Innovations, Inc. d/b/a "3i" ("Defendant") alleging claims for breach of express and implied warranties (Counts I and II) and a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III) arising from the sale of permanent endosseous dental implants, known as the Osseotite NT Certain Implant, and related system components (the "Implant Product"), that were allegedly designed, manufactured, marketed, distributed, and sold by Defendant. (*See* D.E. 112 at 1; *see also* D.E. 93 ¶ 7.) Plaintiff then filed the instant Motion on December 7, 2007, initially seeking to certify as a class on its three claims "all periodontists, oral surgeons, and similar medical dental professionals" in the United States who purchased the Implant Product from Defendant and have had to replace, at their cost, the Implant Product at a rate substantially higher than warranted, during the period July 28, 2003—when the Implant Product was first marketed and sold to periodontists throughout the United States—to the date of the trial. (D.E. 60; *see also* D.E. 61–62; D.E. 93 ¶¶ 10–11.) Defendant filed its opposition on January 14, 2008 (D.E.77), and on February 5, 2008, Plaintiff filed its reply (D.E.88). In its reply, Plaintiff sought to amend the class definition on its breach of express warranty claims only, limiting the class to members from certain states (and the District of Columbia) which do not require reliance as an element of a breach of express warranty claim and who "received marketing materials about Implant Product's success rate, and have had to

replace the Implant Product at a rate higher than warrantied within the applicable statute of limitations." (*See id.* at 8–9; *see also* D.E. 112 at 5.)

In addition, the Magistrate Judge permitted Plaintiff to file a supplemental memorandum of law (D.E.99), and permitted Defendant to file a response to that supplemental memorandum of law (D.E.102). On April 18, 2008, the Magistrate Judge heard oral argument on this Motion. (D.E. 112 at 2.) At oral argument, Plaintiff proposed further modifications to the proposed class on its breach of express warranty claims, namely, all periodontists, oral surgeons, and similar medical-dental professional who had experienced a failure rate in excess of their normal rate and whose failure rate was higher than warranted by Defendants. (*See id.* at 5.)

As a threshold matter, the Magistrate Judge determined that Plaintiff has failed to set forth adequately defined and clearly ascertainable classes, because determining who qualified as members of each of the proposed classes would require the Court to first make a legal determination on Defendant's warranted rate of failure, which would in turn require the Court to decide whether the marketing materials prepared by Defendant constitute an express warranty under applicable law, and then determine that each putative class member experienced a failure rate that was higher than warranted by Defendant. (D.E. 112 at 6.) The Magistrate Judge then noted that, under Plaintiff's definitions, an individual who purchased a single Implant Product and unsuccessfully implanted it in a patient would be included in the class, regardless of the reason for the failure, because he or she experienced a 100% failure rate, and would have had to replace the product at a higher rate than warranted. (*Id.*) The Magistrate Judge then addressed the modifications proposed by Plaintiff at oral argument involving defining the class based on a "normal failure rate," and found that the Court would still be required to make factual determinations as to each individual putative class member's "normal fail-

---

1. The Complaint was amended by interlineation only to correctly reflect the full name of Plaintiff.

(*See* D.E. 1, D.E. 91–93.)

ure rate," and that, in addition, Plaintiff fails to explain how, and on what period of time, each member's "normal failure rate" would be determined. (*Id.* at 6–7.) The Magistrate Judge also noted that medical records may no longer be available, further complicating the task of defining the classes as modified by Plaintiff. (*Id.* at 6.) Recognizing nonetheless that a deficient class definition can be modified, the Magistrate Judge then analyzed the requirements under Federal Rule of Civil Procedure 23 ("Rule 23") for class certification.

As to numerosity, the Magistrate Judge found that, assuming Plaintiff could present adequate proposed class definitions, Plaintiff satisfies the numerosity requirement in light of the large number of Implant Products sold by Defendant and the geographic dispersion of the proposed class members. (*Id.* at 8.) As to commonality, the Magistrate Judge found that the questions linking the putative class members are substantially related to the resolution of the litigation, and, given the low threshold for establishing commonality, Plaintiff has satisfied the commonality requirement. (*Id.* at 9–10.)

As to typicality, the Magistrate Judge found that Plaintiff has satisfied the typicality requirement for both breach of express and implied warranty claims, noting that Defendant does not challenge typicality regarding Plaintiff's breach of express warranty claim, and that the Supplemental Affidavit of William M. Cohen supports a finding of privity between Plaintiff and Defendant sufficient to demonstrate that the Plaintiff's claims are typical of the class. (*Id.* at 10–11.) With respect to the FDUTPA claim, the Magistrate Judge first engaged in an extensive conflict-of-laws analysis, and found that Missouri—not Florida—has the most significant relationship to the Plaintiff's unfair trade practice claim, and, as such, Plaintiff does not have standing to assert a FDUTPA claim on behalf of each putative class member; thus, the Magistrate Judge found that Plaintiff has not satisfied the typicality requirement with respect to its FDUTPA claim. (*Id.* at 12–26.)

As to adequacy, the Magistrate Judge found that Plaintiff does not have any apparent conflicting interests with potential class members; that Plaintiff appears to be in-

volved in the litigation; that Defendant does not question the qualifications, experience or ability of Plaintiff's counsel; and that Plaintiff's counsel appears to be well-equipped to prosecute this action. (*Id.* at 26.) Thus, with respect to the warranty claims, the Magistrate Judge found that Plaintiff satisfies the adequacy requirement. Nonetheless, with respect to the FDUTPA claim, the Magistrate Judge found that Plaintiff cannot satisfy the adequacy requirement because Plaintiff lacks standing to bring the FDUTPA claim. (*Id.*)

The Magistrate Judge then turned to the requirements under Rule 23(b)(3), under which Plaintiff seeks certification. (*Id.* at 27.) Finding that the Plaintiff's breach of express warranty claim is based on Defendant's marketing materials, which contained a Florida choice-of-law provision, and that there are substantial differences between the warranty laws of various states, the Magistrate Judge engaged in a conflict-of-laws analysis on the express warranty claim, and concluded that Missouri law should apply to Plaintiff's express warranty claim, but that the law of the state of each putative class member would apply to his or her express warranty claims. (*Id.* at 27–31.) As such, the Magistrate Judge found that individual legal issues predominate, and that Plaintiff does not therefore satisfy the predominance requirement of Rule 23(b)(3) with respect to the breach of express warranty claim. (*Id.* at 31.) Moreover, the Magistrate Judge concluded that, even if Florida law were to apply to the claims of all putative class members, individual factual questions preclude a finding of predominance, because (1) each member would have to show that he or she was injured as a result of Defendant's breach of express warranty; and (2) each member would have to show that he or she gave Defendant notice within a reasonable time that the Implant Products were nonconforming in order to recover damages for breach of either an express or implied warranty, and what constitutes a reasonable time is a highly individualized factual determination in this case because the putative members purchased the Implant Product at different times and in varying quantities. (*Id.* at 31–33.)

As to the breach of implied warranty claim, the Magistrate Judge concluded as well that individual factual and legal issues predominate that claim because each putative class member would have to show reliance, as well notice to Defendant, on an individualized basis; further, each would have to establish that the implied breach of warranty was the proximate cause of his or her loss, and that each Implant Product purchased failed as a result of a defect in the Implant Product. (*Id.* at 33–34.)

As to the FDUTPA claim, the Magistrate Judge reiterated that FDUTPA would not apply to the claims of every putative class member, and that the Court would have to make legal inquiries concerning the consumer protection laws of 49 states and the District of Columbia. (*Id.* at 34.) As such, the Magistrate Judge concluded that individualized legal questions predominate over common questions regarding Plaintiff's FDUTPA claim. (*Id.*) The Magistrate Judge also found that individualized questions of fact predominate over common questions of fact, because each putative class member would have to show that it received Defendant's sales brochures or other marketing materials in which Defendant's representation of a two-percent failure rate was made, but that Defendant did not provide its customers with a uniform set of marketing materials. (*Id.* at 35.) Further, the Magistrate Judge concluded that causation also presents an individualized question, because the failure of the Implant Product could be due to a number of reasons. (*Id.* at 35–36.) Moreover, the Magistrate Judge found that, even if Plaintiff's FDUTPA claim was based on omissions by Defendant—which the Magistrate Judge notes was not asserted by Plaintiff in the complaint—individual factual questions would nonetheless predominate, as each putative class member would still have to show causation that his or injury resulted from Defendant's omissions. (*Id.* at 36–37.)

Finally, the Magistrate Judge concluded that, because individual legal and factual issues predominate all claims, a class action proceeding in this case would be unmanageable and would not be a superior method of adjudication. (*Id.* at 38.)

Based on the thorough reasoning and analysis set forth in the Report, the Magistrate Judge recommends denial of the Motion in its entirety.

## II. Objections and Response to Objections

In its Objections, Plaintiff objects to the Magistrate Judge's finding that Plaintiff has not adequately defined the proposed classes. (*See* D.E. 115.) Plaintiff argues that class members can be adequately identified from Defendant's records, which show that Defendant repeatedly sent Plaintiff, without charge, replacement Implant Products that failed at a rate of greater than 1%. (*Id.*) Without support, Plaintiff also asserts that "other class members may be identified without too much difficulty from [Defendant's] records as well." (*Id.* at 3.) Plaintiff .next argues that the Magistrate Judge incorrectly concluded that Plaintiff lacks standing to bring a FDUTPA claim because he improperly used the place of injury as the touchstone for his conclusion, and, according to Plaintiff, the common injury occurred in Florida, not in Missouri or other states, because all transactions, including payments for the Implant Products, were made to Defendant in Florida, and because the conduct causing the injury—printing a false failure rate in the pamphlet—occurred in Florida. (*Id.* at 3–5.) Similarly, Plaintiff contends that the Magistrate Judge failed to adequately take into account that Florida was the place of common injury in his conflict-of-laws analysis on the breach of express warranty claim. (*Id.* at 6.)

Further, Plaintiff argues that the Magistrate Judge incorrectly determined that the notice requirement creates individualized questions of fact that predominate over common questions of fact with regard to Plaintiff's breach of express warranty claim, because the complaint, as well as Defendant's records of sending out replacement Implant Products without charge, serve as notice, and because whether notice is timely and reasonable is a single question applicable to all putative class members. (*Id.* at 6–7.) With regard to the FDUTPA claim, Plaintiff argues that the Magistrate Judge incorrectly concluded that individualized questions of fact would also predominate on the issue of

whether each class member received the sales brochure or other marketing materials with representations of a 1% failure rate, because, as Plaintiff asserts, this single question of fact can be handled through a class notice and submission by class members of a sworn declaration and copies of the marketing materials received. (*Id.* at 7.) Plaintiff also objects to the Magistrate Judge's finding regarding causation, and argues that causation under FDUTPA can be proven by evidence of the putative class members' receipt of the uniform written representations in the marketing materials and subsequent purchase and failure of the Implant Product; Plaintiff further asserts that any failure of the Implant Product as a result of improper implantation or a patient who was not a candidate is "merely a defense to liability." (*Id.* at 7–8.) In this manner, Plaintiff appears to argue that the liability issue is common to the class, and thus, despite some individualized issues, common questions predominate over individual questions regarding causation. (*Id.* at 8.)

Finally, Plaintiff argues that the Magistrate Judge incorrectly concludes that a class action would not be a superior method of adjudication here, because the alternative would be tens of thousands of individual lawsuits for small amounts of money. (*Id.*)

In its Response to Plaintiff's Objections, Defendant argues that the Magistrate Judge correctly ruled that Plaintiff's class definitions are inadequate because individualized inquiries are necessary to determine who is a member of the classes. (D.E. 118 at 3–4.) Defendant notes that Plaintiff did not challenge the Magistrate Judge's .finding that Defendant did not provide its customers with a uniform set of marketing materials, and argues that Plaintiff's assertion that members could be identified from Defendant's records is not supported by the record, as Defendant replaced failed Implant Products on the basis of its warranty program, not based on a percentage failure threshold. (*Id.* at 4–5.) Thus, Defendant asserts that its records will not identify which putative class members had failures over a higher than warranted percentage. (*Id.* at 5.) Next, Defendant argues that the Magistrate Judge expressly disclaimed giving undue importance to the place of injury factor in deter-

mining that Plaintiff lacks standing to bring its FDUTPA claim, and that, in any event, he was correct in determining that Missouri was the place of injury, noting that Plaintiff essentially argues that its own injury occurred in the place where Defendant received payment for the product (Florida), despite the fact that Plaintiff is a Missouri company, received sales calls in Missouri, received marketing materials in Missouri, used the product in Missouri, had the product fail in Missouri, and suffered economic injury in Missouri. (*Id.* at 6–8.) Defendant then asserts that the Magistrate Judge correctly balanced the various factors in holding that Plaintiff lacks standing to bring FDUTPA claims, and thus his claims are not typical of other class members. (*Id.* at 8–12.)

As to predominance, Defendant argues that the Magistrate Judge correctly ruled that individual questions predominate with respect to the breach of express warranty claims, arguing, *inter alia,* that Plaintiff does not challenge the Magistrate Judge's findings that fact questions related to causation are individualized; that Plaintiff fails to explain how the notice question presents a single question of fact; that the unique circumstances of each buyer's situation requires individual inquiry as to whether a given buyer complained or otherwise gave notice to Defendant regarding problems with the Implant Product; that, as the Magistrate Judge found, the complaint is insufficient to satisfy the notice requirement; and that determinations regarding whether putative class members installed the Implant Product in accordance with prescribed procedures and practices presents individualized questions for each Implant Product. (*Id.* at 12–16.) Defendant further argues that the Magistrate Judge correctly ruled that individual questions predominate with respect to the proposed FDUTPA class, and that Plaintiff acknowledges that the issue of what representations Defendant made to a given putative member is individualized. (*Id.* at 16–17.) With respect to causation, Defendant contends that Plaintiff's argument that causation may be proven by evidence of putative class members' receipt of the uniform written misrepresentations in the marketing materials is flawed, as the record demon-

strates that Defendant did not make uniform representations. (*Id.* at 18–19.) Finally, Defendant argues that the Magistrate Judge correctly ruled that superiority is not satisfied due to the unavoidable need to make individualized factual inquiries regarding each of the claims sought to be certified. (*Id.* at 20.)

## III. Discussion

■ The Court has broad discretion in ruling on a motion to certify a class. *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir.1983). Rule 23(a) of the Federal Rules of Civil Procedure, however, sets forth the following prerequisites to one or more members of a class suing as representative parties on behalf of the entire class:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P.* 23(a). As the Magistrate Judge correctly noted in his Report, these requirements for certifying a class action are commonly referred to as numerosity, commonality, typicality, and adequacy.

In addition, Rule 23(b) further mandates that one of three criteria be satisfied in order to maintain a class action. As the Magistrate Judge noted, Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.*

As a threshold matter, the Court notes that Plaintiff originally sought class certification on all three claims in this action, namely, breach of express warranty, breach of implied warranties, and violation of FDUTPA.

As accurately argued by Defendant, however, Plaintiff does not object to the Magistrate Judge's finding that certification of the proposed class on the breach of implied warranties claim would be inappropriate under Rule 23(b)(3). (*See* D.E. 112 at 33.) Indeed, the Court finds that the Magistrate Judge did not err [2] in finding that reliance is a necessary element of a breach of implied warranties claim, and that, in turn, each putative class member in this case would therefore have to show reliance on an individualized basis. *See, e.g., Light v. Weldarc Co.*, 569 So.2d 1302, 1305 (Fla. 5th Dist.Ct.App.1990) (noting that "[t]he element of reliance [is] required for any implied warranty to arise"). Class certification on Plaintiff's breach of implied warranty claim is thus inappropriate under Rule 23(b)(3).

Having found that class certification on Plaintiff's breach of implied warranties claim is not warranted in this case, the Court will next address class certification of Plaintiff's remaining claims, breach of express warranty and violation of FDUTPA.

### A. Breach of Express Warranty Claim

#### i. Rule 23(a) Requirements

The Magistrate Judge found that, with respect to Plaintiff's breach of express warranty claim, Plaintiff has satisfied the numerosity, commonality, typicality, and adequacy prongs under Fed.R.Civ.P. 23(a). Neither party objects to this finding, and the Court finds that the Magistrate Judge's analysis and conclusion regarding Plaintiff's satisfaction of the four factors was thorough and well-reasoned.

#### ii. Rule 23(b) Requirements

Despite finding that Plaintiff satisfied the Rule 23(a) requirements as to its breach of express warranty claim, the Magistrate Judge concluded that Plaintiff failed to satisfy its burden under Rule 23(b) of demonstrating that questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the proposed class. Plaintiff argues that the Magistrate Judge incorrectly

---

**2.** Pursuant to 28 U.S.C. § 636(b)(1), the Court is only required to make a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

made this determination because he failed to take into account the place of common injury in his conflict-of-laws analysis on this claim, and because he incorrectly concluded that the notice requirement creates individualized questions of fact because the complaint serves as adequate notice. As an initial matter, the Court notes that, as also noted by the Magistrate Judge and by Defendant, Plaintiff failed to present any conflict-of-laws analysis for its breach of warranty claim, despite Plaintiff having the burden to do so, and in that respect, Plaintiff has failed to satisfy the predominance prong under Rule 23(b) as to its breach of express warranty claim. In any event, the Court finds that the Magistrate Judge considered appropriate factors in his conflict-of-laws analysis and, in light of his analysis, properly concluded that the law of the state of each putative class member would apply to his or her breach of express warranty claim.

Moreover, the Court finds that, as did the Magistrate Judge, even if Florida law were to apply to the claims of all putative class members, individual factual questions would still preclude Plaintiff's satisfaction of the predominance prong under Rule 23(b). Significantly, Plaintiff did not object to the Magistrate Judge's finding that each individual, putative class member would have to demonstrate injury as a result of Defendant's breach of warranty, which is a proper finding under the facts of, and law applicable to, this case. *See, e.g., McCraney v. Ford Motor Co.,* 282 So.2d 878 (Fla. 1st Dist.Ct.App.1973) (noting requirement of a causal connection between any breach of warranty and injury claimed); *Dunham–Bush, Inc. v. Thermo–Air Service, Inc.,* 351 So.2d 351, 353 (Fla. 4th Dist.Ct.App.1977) (noting that, to properly plead a cause of action for breach of warranty under Florida's Uniform Commercial Code, a complaint must allege that injuries were sustained by the buyer as a result of the breach of warranty). In addition, the Court overrules Plaintiff's objection, which is unsupported by law, that the complaint and/or Defendant's records of sending out replacement Implant Products without charge serve as adequate notice to Defendant

that the Implant Products did not conform to its alleged express warranty and that notice is therefore a "single question applicable to the entire putative class." (*See* D.E. 115 at 6.) As the Magistrate Judge correctly noted, each putative class member must demonstrate that he or she gave the required notice of the breach to Defendant within a reasonable time pursuant to Fla. Stat. Section 672.607; clearly, this is an individualized factual inquiry, as some potential class members may have provided timely notice, while others may have provided untimely notice of Defendant's alleged breach or no notice at all. Thus, in light of the notice requirement, yet another basis exists for concluding that individual questions of fact predominate over those common to the class in this case. *See, e.g., Arrowsmith v. Broward County,* 633 So.2d 21, 22 (Fla. 4th Dist.Ct.App.1993) (class certification denied where each claimant was required to provide statutory notice to proceed on claim).[3]

The Court further overrules Plaintiff's objection to the Magistrate Judge's finding that a class action would not be the superior method of adjudication of this claim. Given that adjudication of the breach of express warranty claim on a class basis would still necessitate individualized inquiries as described above, treatment of the claim as a class action would hardly be a superior method. *See, e.g., Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262, 273 (S.D.Fla.2003) (finding that plaintiff failed to meet superiority requirement due to individualized inquiries required to adjudicate claims, and noting that several other courts have denied class certification under similar circumstances, finding that predominance and superiority were not met where "the economies of scale achieved by class treatment are more than offset by the individualization of numerous issues relevant to a particular plaintiff") (citations omitted).

For these reasons, the Court finds that Plaintiff has failed to satisfy the elements required by Rule 23(b), and that class certification is therefore inappropriate on Plaintiff's breach of express warranty claim.[4]

---

3. The requirements for establishing a class action under Florida law are nearly identical to the

requirements for establishing a class action under Rule 23. *See* Fla. R. Civ. P. 1.220 (2008).

4. As noted above, before addressing the require-

## B. FDUTPA CLAIM

### i. Rule 23(a) Requirements

The Magistrate Judge found that, with respect to Plaintiff's FDUTPA claim, Plaintiff has satisfied the numerosity and commonality prongs under Fed.R.Civ.P. 23(a); neither party objects to this finding, and the Court finds that the Magistrate Judge's analysis and conclusion regarding Plaintiff's satisfaction of these two factors was thorough and well-reasoned. After a lengthy and detailed conflict-of-laws analysis, the Magistrate Judge further found that Plaintiff does not have standing to assert the FDUTPA claim, as he concluded that Missouri has the most significant relationship to Plaintiff's unfair trade practice claim. Based on his finding that Plaintiff lacks standing, the Magistrate Judge then concluded that Plaintiff failed to satisfy the typicality and adequacy prongs under Rule 23(a). Plaintiff objects to this finding on three grounds, arguing that: (1) the Magistrate Judge placed undue emphasis on the place of injury; (2) the factors in the Restatement (Second) of Conflict of Laws do not weigh in favor of applying Missouri law; and (3) the Magistrate Judge failed to give appropriate weight to Defendant's Florida choice-of-law provision in its Five–Year Warranty.

First, the Magistrate Judge specifically noted that the "place of injury is not as significant in the instant case … and the undersigned will not assign significant weight to the first contact." (*See* D.E. 112 at 17.) The Report reflects this, as the Magistrate Judge considered several additional factors in his conflict-of-laws analysis, including where the conduct causing the injury occurred; the domicile, nationality, place of incorporation and place of business of the parties; and the place where the relationship between the parties is centered.

Second, the Court finds that, as the Magistrate Judge concluded, although some factors in this case weigh in favor of applying Florida law (and hence FDUTPA), the application of Missouri law to Plaintiff's claim is more appropriate when considering all of the relevant factors in this case. It is undisputed on the record that Plaintiff received the offending marketing materials in Missouri; that Plaintiff is a Missouri corporation with its principal place of business in Missouri; that Plaintiff purchased, received, and used the Implant Products in Missouri; and it cannot legitimately be disputed that the alleged injury to Plaintiff—namely, the loss of the purchase price of the Implant Product, the value of the time required to remove defective Implant Products from patients; and the value of the time required to implant replace-

ments under Rule 23(a), the Magistrate Judge analyzed whether Plaintiff's proposed class definition on its breach of express warranty claim was adequate. (*See* D.E. 112 at 4) (quoting *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D.Fla.2006) ("Before analyzing the Rule 23(a) requirements, or as part of the numerosity inquiry, a court must determine whether the class definition is adequate").) The Magistrate Judge concluded that various deficiencies existed in even the revised proposed class definition (presented during oral argument) that resulted in problems in identifying the class and that would require individualized hearings. (D.E. 112 at 4–7.) In its Objections, Plaintiff does not challenge the Magistrate Judge's finding regarding the proposed class definition presented at oral argument, and, for the reasons explained in the Report, the Court finds that the Magistrate Judge properly concluded that the revised proposed class definition presented at oral argument as to Plaintiff's breach of express warranty claim did not constitute an adequate class definition and does not present a clearly ascertainable class. Plaintiff does, however, set forth yet another revised proposed class definition as to its

breach of express warranty claim in its Objections, and argues that the revised definition sets forth an ascertainable and identifiable class. (*See* D.E. 115 at 1–3.) The Court need not address arguments that Plaintiff failed to present to the Magistrate Judge under these circumstances. *See, e.g., Papapanos v. Lufthansa German Airlines*, Case No. 94–2667–CIV–MARCUS, 1996 WL 33155438, *12, 1996 U.S. Dist. LEXIS 6433, at *35–37 (S.D.Fla. Apr. 15, 1996) (noting that "Allowing [a party] to present their case to the Magistrate, and then, because they were unsuccessful, present new issues and arguments to this Court frustrates" the purpose of 28 U.S.C. § 636 and that it was not intended to "give litigants an opportunity to run one version of their case past the magistrate, then another past the district court") (citations omitted). In any event, even if the Court were to find that the revised class definition set forth in Plaintiff's objections was adequate, in light of the Court's finding above that Plaintiff failed to satisfy Rule 23(b) with respect to its breach of express warranty claims, class certification of such claims is not appropriate.

ments (*see* D.E. 93 ¶¶ 26, 36)—occurred in Missouri. The Court thus finds that, with respect to Plaintiff's claim, application of Missouri law implicates greater policy interest than application of Florida law, and thus application of Missouri law regarding unfair and deceptive trade practices to Plaintiff's claim is more appropriate in this case. *See, e.g., Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225–226 (S.D.Fla.2002) (denying class certification and finding that plaintiff's individual claim was more appropriately brought under the analogous Texas deceptive trade practices act than FDUTPA, and that, as a result, plaintiff lacked standing to bring his FDUTPA claim); *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094 (Fla. 4th Dist.Ct.App.2003) (holding that where alleged deceptive unfair trade practice involved nationwide sale of products, where claims asserted in the national class action occurred both in the state of Florida and in 49 other states, and where the alleged wrong was committed, and the damage done, at the site of the sale of products in the various states where members of the purported class made their purchases, denial of class certification was proper).

Third, the Court overrules Plaintiff's objection that the Magistrate Judge failed to give appropriate weight to the fact that Defendant's Five–Year Warranty Program contains a Florida choice-of-law provision. The Magistrate Judge noted this fact and included it in his analysis, finding that this particular fact weighed in favor of application of Florida law. This single fact is not dispositive of the conflict-of-laws analysis, however, and is merely one factor for the Court to weigh in a conflict-of-laws analysis. *See, e.g.,* Restatement (Second) of Conflict of Laws § 145 (1971) (listing various factors to be taken into account to determine the law applicable to an issue); *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir.2007) (noting that these factors "are to be evaluated according to their relative importance with respect to the particular issue") (citations omitted). As the Magistrate Judge also noted, Plaintiff's FDUTPA claim is not premised on the Five–Year Warranty Program, and, in light of the factors weighing in favor of the application of Missouri law as discussed above, the Court finds that the Magistrate Judge appropriately weighed the choice-of-law provision in Defendant's Five–Year Warranty Program in his analysis.

The Court thus concludes, as did the Magistrate Judge, that Plaintiff does not have standing to assert a FDUTPA claim on behalf of each putative class member. In this regard, Plaintiff has not established that its claim, to which Missouri law is applicable, is typical of the claims of the putative class members, who reside in, purchased, received, and used the Implant Products in, and allegedly suffered injury in, various states, and who separately purchased the Implant Product under circumstances that differ from those of Plaintiff. Similarly, Plaintiff cannot establish that it could fairly and adequately protect the interests of the putative class. *See, e.g., Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1289 (11th Cir.2004) ("a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent"); *White v. Deltona Corp.*, 66 F.R.D. 560, 563 (S.D.Fla.1975) (where plaintiff lacked standing to represent purchasers, plaintiff did not satisfy "fair and adequate representation requirement").

### ii. Rule 23(b) Requirements

Even if Plaintiff could satisfy the requirements of Rule 23(a) with respect to the FDUTPA claim (which it cannot, for the reasons described above), class certification on the claim is inappropriate because, as thoroughly discussed by the Magistrate Judge in his Report, Plaintiff has not satisfied the requirements for certifying a class under Rule 23(b). Moreover, Plaintiff's objection to the Magistrate Judge's conclusion that individualized questions of fact predominate regarding the FDUTPA claim is without merit. First, Plaintiff appears to argue that individual questions of fact do not predominate because, in Plaintiff's view, the issue of whether each putative class member actually received Defendant's marketing materials containing the alleged misrepresentations is a "single question of fact [that] can be handled through a class notice and submission by class members of a sworn declaration and copies of the marketing materials received."

(See D.E. 115 at 7.) This suggestion does not change the fact that the issue of whether each putative class member actually received Defendant's marketing materials is an individual question of fact critical to each member's claim that predominates over any common issues of fact; further, as Defendant argues, this suggestion merely moves the individualized inquiries "up from the time of trial to the period before class notice would be distributed." (D.E. 118 at 17.) Additionally, individualized inquiries regarding causation also preclude a finding of predominance in this case, as each putative class member must prove causation in order to establish Defendant's liability in this case. *See, e.g., Black Diamond Props. v. Haines,* 940 So.2d 1176, 1179 (Fla. 5th Dist.Ct.App.2006) (class certification improper where it was necessary for each plaintiff to offer proof that he or she was damaged as a result of defendant's purported misrepresentations).

Finally, given the Court's finding above that resolution of Plaintiff's FDUTPA claim (assuming Plaintiff had standing to bring the claim) would necessitate individualized factual inquiries, and for additional reasons explained by the Magistrate Judge in his Report, the Court finds that treatment of this claim as a class action would hardly be a superior method. *See Perez,* 218 F.R.D. at 273.

For these reasons,[5] class certification of Plaintiff's FDUTPA claim is not proper in this case. In addition, because the Court has found that Plaintiff lacks standing to bring a claim under FDUTPA and the Court has denied class certification on that claim, Plaintiff's claim under FDUTPA is hereby dismissed from the Amended Complaint. *See, e.g., Hammond v. Reynolds Metals Co.,* 219 Fed.Appx. 910, 915 (11th Cir.2007) (affirming district court's *sua sponte* dismissal of claims for lack of standing). Accordingly, it is:

### ORDERED AND ADJUDGED that:

1. The Report of the Magistrate Judge (D.E.112) is **ADOPTED consistent with this Order.**

**5.** In addition, as with Plaintiff's breach of express warranty claim, the Court finds that it need not address arguments regarding the revised proposed FDUTPA class definition presented for the first time in Plaintiff's Objections. (*See supra* n. 3.) In any event, even if the Court were to find

2. Plaintiff's Motion for Class Certification, filed on December 7, 2007 (D.E.60), is **DENIED.**

3. Plaintiff's claim under FDUTPA is **DISMISSED with prejudice** from the Amended Complaint due to Plaintiff's lack of standing to bring such claim.

4. Defendant's Motion for Judgment on the Pleadings (D.E.54) on Count III (violation of FDUTPA) of the Amended Complaint is **DENIED as moot.**

5. Allegations in the Amended Complaint (D.E.93) pertaining to the proposed class action are hereby **STRICKEN.**

6. In accordance with the Court's April 15, 2008 Order (D.E.109), the parties shall agree upon a date for mediation to occur no later than September 30, 2008, and Plaintiff's counsel shall file a proposed order scheduling mediation reflecting such agreed date within five (5) days of the date of this Order.

**DONE AND ORDERED.**

### *REPORT AND RECOMMENDATION*

JOHN J. O'SULLIVAN, United States Magistrate Judge.

THIS MATTER is before the Court on Plaintiff's Motion for Class Certification (DE# 60, 12/07/07). On March 5, 2008, this matter was referred to the undersigned by the Honorable Joan A. Leonard, United States District Court Judge for the Southern District of Florida (DE# 96). Having held a hearing on April 18, 2008 and having carefully considered the instant motion, the exhibits, court file and applicable law, the undersigned respectfully recommends that Plaintiff's Motion for Class Certification (DE# 60, 12/07/07) be **DENIED.**

### *BACKGROUND*

"Defendant 3i designed, manufactured, marketed, distributed, and sold a permanent endosseous dental implant, known as the Os-

that the revised class definition set forth in Plaintiff's Objections was adequate, in light of the Court's finding above that Plaintiff failed to satisfy requirements under both Rule 23(a) and Rule 23(b) with respect to the FDUTPA claim, class certification of this claim remains inappropriate.

seotite NT CERTAIN Implant and related system components including customized shaping drills [hereinafter 'Implant Product'].'' *See* Complaint (DE# 93 at ¶ 7, 2/27/08). On March 23, 2007, the plaintiff [1] filed a complaint alleging claims for breach of express and implied warranties (Counts I and II) and a claim under Florida's Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA") (Count III) arising from the sale of the Implant Product. *See* Complaint (DE# 93, 2/27/08).

The plaintiff filed the instant motion, Plaintiff's Motion for Class Certification (DE# 60), on December 7, 2007. The defendant filed Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77) on January 14, 2008. The plaintiff filed a reply memorandum on February 5, 2008. *See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE # 88, 2/5/08).[2] The undersigned permitted the plaintiff to file its Supplemental Memorandum of Law in Support of Plaintiff's Motion for Class Certification (DE# 99, 3/12/08) and the defendant to file Defendant Biomet 3i, Inc.'s Response to Plaintiffs' Supplemental Memorandum of Law in Support of its Motion for Class Certification (DE# 102, 3/19/08). On April 17, 2008, the defendant filed Defendant's Notice of Filing Supplemental Authority in Support of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification. Following the parties' extensive briefing of the issues, the undersigned heard oral argument concerning the instant motion on April 18, 2008.

### ANALYSIS

Federal Rule of Civil Procedure 23 establishes the requirements for certifying a class action in federal court. District courts must conduct a "rigorous analysis" of Rule 23 class certification requirements. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In doing so, the Court must accept as true the factual allegations of the complaint and determine only whether those allegations meet the requirements of Rule 23. *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 693 (S.D.Fla.2001). While the Court is not to conduct a preliminary inquiry into the merits of a case at this stage, the Court "may look beyond the allegations of the complaint in assessing whether a motion for class certification should be granted." *Id.* (citing *Gen. Tel. Co. of Sw.*, 457 U.S. at 160 (1982)).

In order to certify a class action in federal court, the plaintiff bears the burden of demonstrating that the proposed class satisfies the prerequisites of Rule 23(a) and at least one of the alternative requirements of Rule 23(b). *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351–52 (11th Cir.2001). Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* The Rule 23(a) requirements are commonly referred to as numerosity, commonality, typicality and adequacy.

If all of the prerequisites of Rule 23(a) are met, then the Court must evaluate whether at least one of the three provisions of Rule 23(b) apply. In the instant case, the plaintiff seeks class certification under Rule 23(b)(3). A class action under Rule 23(b) (3) is sustainable when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

---

1. The initial complaint identified the plaintiff as Greater St. Louis Periodontics, P.C. On February 22, 2008, the Court granted the plaintiff leave to amend the Complaint by interlineation to reflect the plaintiff's true corporate name: William M. Cohen, D.M.D., M.S., Greater St. Louis Periodontics, P.C. *See* Order (DE# 92, 2/22/08).

2. The plaintiff's initial reply (DE# 80, 1/28/08) was stricken by the Court because it "exceed[ed] the page limitation set forth in the local rules … and appear[ed] to improperly raise new arguments therein." *See* Order (DE# 86, 1/31/08).

## 1. Adequacy of Class Definition

At the outset, the undersigned will determine whether the plaintiff has adequately defined the class. "Before analyzing the Rule 23(a) requirements, or as part of the numerosity inquiry, a court must determine whether the class definition is adequate." *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D.Fla.2006) (citation omitted). "A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D.Fla. 2003).

With respect to its breach of implied warranty and FDUTPA claims, the plaintiff seeks class certification on behalf of "all periodontists, oral surgeons, and similar medical-dental professionals (or, as applicable, their professional corporations or other corporate entities) who purchased the Implant Product in the United States and have had to replace the Implant Product at a rate higher than warrantied." *See* Complaint (DE# 93 at ¶ 11, 2/27/08).[3]

The plaintiff also seeks to certify a breach of express warranty class consisting of:

all periodontists, oral surgeons, and similar medical-dental professionals (or, as applicable, their professional corporations or other corporate entities) in Alabama, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Montana, New York, North Carolina, North Dakota, Pennsylvania, South Carolina, South Dakota,[4] Vermont, Virginia and West Virginia who purchased the Implant Product in the United states, received marketing materials about Implant Product's success rate, and have had

to replace the Implant Product at a rate higher than warrantied within the applicable statute of limitations.

*See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE# 88 at 8–9, 2/5/08). The express warranty class is limited to the District of Columbia and those states which, according to the plaintiff, do not require reliance as an element of a breach of express warranty claim. At oral argument, the plaintiff proposed the following modification: all periodontists, oral surgeons, and similar medical-dental professionals who had experienced a failure rate in excess of their normal rate and whose failure was higher than warrantied by the defendants.

The defendant argues that the plaintiff's class definitions are defective because they "require[ ] a finding that a class member 'had to replace the Implant Product at a rate higher than warrantied' just to identify who is in the class." *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 18, 1/14/08). "[T]his determination will require individualized mini-trials of each putative class member." *Id.*

■ The undersigned agrees with the defendant. In order to determine who is a member of the putative class, the Court would first have to make a legal determination on the defendant's warrantied rate of failure. This will require the Court to decide whether the marketing materials prepared by the defendant constitute an express warranty pursuant to the applicable law[5] and then determine that each putative class member experienced a failure rate that was higher than warrantied by the defendant. Notably, under the plaintiff's class definition, an individual who purchased a single Implant Product and unsuccessfully implanted that

---

**3.** The defendant argues that the plaintiff has inconsistently defined its proposed class. Although there is some variation in the class definitions contained in the Complaint (DE# 93, 2/27/08), the Plaintiff's Motion for Class Certification (DE# 60, 12/7/07) and the plaintiff's Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (DE# 61, 12/7/07), in its reply, the "[p]laintiff [clarified] that any alleged inconsistency in its proposed class definitions [would be] remedied by [using] the [class definition] in

its complaint." *See* Plaintiffs' Reply Memorandum in Support of Motion for Class Certification (DE# 88 at 6, 2/5/08).

**4.** The defendant's discovery responses show that the Implant Product was not sold in South Dakota.

**5.** The undersigned will address conflict of law issues in section 2(C) and 3(A)(i) of this Report and Recommendation.

product would be included in the class (regardless of the reason for the implant failure) because he or she experienced a 100% failure rate and would have had to replace the product at a higher rate that warrantied.

The "normal failure rate" modification proposed at oral argument creates further problems in identifying the class. It requires that the Court make factual determinations as to each individual putative class member's "normal failure rate." The plaintiff does not explain how this would be a workable class definition. To determine the normal failure rate, would each putative class member look through patient records to determine (a) the number of implant procedures performed and (b) the number of patients whose implants failed? Presumably, some medical records, particularly older records, are no longer available. The plaintiff does not place a limit on the time frame for determining a putative class member's normal rate of failure. Is the normal rate of failure determined by the number of implants performed in the past year, the past five years, or the putative class member's total years of practice? Once a putative class member determines the number of failures he or she has experienced, would that putative class member then discount those failures which occurred due to improper implantation or misuse of the product by the patient? The plaintiff's proposed modification presents problems in identifying the class and would require individualized hearings. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 266 (S.D.Fla.2003) (rejecting class definition which "require[d] individualized determinations as to who [were] class members.").

Without an adequately defined and clearly ascertainable class, the Court cannot grant class certification. *Perez*, 218 F.R.D. at 266–67. "An identifiable class is essential so that the Court can determine whether a particular claimant is a class member." *Perez*, 218 F.R.D. at 266 (internal citation omitted). Nonetheless, because deficient class definitions can be modified, the undersigned will address the requirements of Rule 23(a) and 23(b)(3) to determine whether the plaintiff

would otherwise be entitled to class certification.

## 2. Rule 23(a) Requirements

### A. Numerosity

■■ Under Rule 23(a)(1), the class must be so numerous that joinder is impracticable. In order for joinder to be impracticable, it need not be impossible but simply difficult or inconvenient. *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 70 (S.D.N.Y. 2000) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762 (2d ed.1986)). Practicability of joinder depends on many factors: the size of the class, the ease of identifying its numbers and determining their addresses, facility of making service on them if joined, and their geographic dispersion. *Hammett*, 203 F.R.D. at 694; *see also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir.1986). The plaintiff argues that it has satisfied the numerosity requirement because "3i has sold more than 126,000 units to more than 2,000 customers" in all 50 states.[6] *See* Plaintiff's Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (DE# 99 at 2, 3/12/08).

■ Here, "[the defendant] does not contest numerosity on the ground that the proposed class is too small; it ... argues ... that the proposed class is not adequately defined or clearly ascertainable given Plaintiff's inconsistent and defective class definitions." *See* Defendant Biomet 3i, Inc.'s Response to Plaintiffs' Supplemental Memorandum of Law in Support of its Motion for Class Certification (DE# 102 at 1–2, 3/19/08). The undersigned addressed the defendant's class definition concerns above. Assuming, *arguendo*, that the proposed class definitions are adequate, the plaintiff easily satisfies the numerosity requirement. The large number of Implant Products sold by the defendant and the geographic dispersion of the putative class

---

**6.** According to the defendant's discovery responses, the Implant Product was sold in 49 states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands. *See* Defendant Biomet

3i, Inc.'s Response to Plaintiff's Supplemental Memorandum of Law in Support of its Motion for Class Certification (DE# 102 at 2, 3/19/08).

members make joinder impracticable in the instant case.

## B.  Commonality

■ Commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the representative plaintiff in relation to the class. *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000). The commonality requirement demands that a class action involve issues susceptible to class-wide proof. *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir.2004).

■ The plaintiff argues that it "meets the commonality requirement because the breach of warranty and Florida consumer fraud claims all share as a common issue—that Defendant affirmatively represented that the failure rate for the Implant Product was less than two percent (2%)" and "Defendant never informed [the putative class] that the representations were not true and that the failure rate was actually much higher." *See* Memorandum of Law In Support of Plaintiff's Motion for Class Certification (DE# 61 at 7–8, 12/7/07).[7]

"[T]he threshold for commonality is not high .... [and f]actual differences between class members do not necessarily preclude a finding of commonality." *Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 656 (S.D.Fla. 2008) (quoting *Leszczynski v. Allianz Insurance*, 176 F.R.D. 659, 671 (S.D.Fla.1997)). "The requirement is met if the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Clausnitzer*, 248 F.R.D. at 656 (quoting *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 673–74 (M.D.Ga.1996)). In light of the low threshold of commonality, the plaintiff has satisfied the commonality requirement in the instant case.

## C.  Typicality

■ Typicality requires that the representative plaintiff's claims or defenses be typical of the claims or defenses of the class. "In other words, typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 694 (S.D.Fla.2001). The representative's claims are typical if they arise from the same pattern or practice and are based on the same legal theory as those of the proposed class members. A factual variation in claims will not render a representative's claims atypical unless such variation results in markedly differentiating the representative's factual position from that of the proposed class members. *Id.*

The plaintiff argues that it meets the typicality requirement because:

> Plaintiff and the [putative] Class Members all purchased the Implant Product with the representation from the Defendant and under the belief that the product's failure rate was less than two percent (2%). As a result of the actual, much higher failure rate, Plaintiff, and the putative Class Members sustained financial loss.

*See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (DE# 61 at 10, 12/7/07). The defendant argues that the plaintiff cannot meet the typicality and adequacy[8] requirements because the plaintiff lacks standing to bring its breach of implied warranty claim and its FDUTPA claim. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 19–20, 1/14/08).

### i.  Warranty Claims

■ According to the defendant, the plaintiff lacks standing to bring its breach of implied warranty claim because "an essential requirement of an implied warranty claim in Florida is privity of contract between the plaintiff and defendant." *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 19, 1/14/08). The defendant maintains that the

---

7.  The defendant does not dispute that commonality is satisfied in the instant case. *See* Biomet's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (DE# 77 at 7, n 3, 1/14/08).

8.  Adequacy is addressed in section 2(D) of this Report and Recommendation.

plaintiff did not purchase the Implant Product from the defendant. Rather, the Implant Product was purchased by William M. Cohen (hereinafter "Dr. Cohen").[9] "Because [the] plaintiff is not in privity with [the defendant], it is subject to a unique defense that destroys a finding of typicality and adequacy." *Id.* at 20. The defendant does not challenge typicality with respect to the breach of express warranty claim. The undersigned finds that the plaintiff has satisfied the typicality requirement as to its breach of express warranty claim.

The plaintiff argues that William M. Cohen, D.M.D., M.S., Greater St. Louis Periodontics, P.C. and not Dr. Cohen, purchased the Implant Product. *See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE# 88 at 1, 2/5/08). Thus, the plaintiff is in privity with the defendant and not subject to a unique defense. The plaintiff submits the Supplemental Affidavit of William M. Cohen wherein Dr. Cohen attests that his company purchased 61 NT Certain implants from 3i. *See* Supplemental Affidavit of William M. Cohen (DE# 88 at Exhibit 1, 2/5/08). In light of Dr. Cohen's affidavit, the undersigned finds that the plaintiff is in privity with the defendant and has satisfied the typicality requirement as to its breach of implied warranty claim.

### ii. FDUTPA

The defendant also argues that the plaintiff lacks standing to bring a FDUTPA claim because the state with the most significant relationship to the plaintiff's claim is Missouri, not Florida. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 20, 1/14/08). The plaintiff argues that the application of Florida law to the entire class would not be arbitrary and unfair because the defendant is a Florida corporation and "virtually all of the corporate acts implicated by each claim occurred in Florida." *See* Memorandum of Law in Support of Plaintiff's Motion for Class Certification (DE# 61 at 14, 12/7/08).

Prior to engaging in a conflict of law analysis, the undersigned must first determine if there are true conflicts between FDUTPA and the unfair trade practice laws of the other 48 states [10] and the District of Columbia. "A comprehensive conflict-of-law analysis is only required if the case involves a true conflict." *Pycsa Panama S.A. v. Tensar Earth Technologies, Inc.*, No. 06–20624, 2008 WL 1775409, at *15 (S.D.Fla. Apr.16, 2008) (citing *Tune v. Philip Morris, Inc.*, 766 So.2d 350, 352 (Fla. 2d DCA 2000)); *see also Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F.Supp.2d 1326, 1334 (S.D.Fla.2001) (noting that it was not necessary to consider whether California law or Florida law applied because there was no true conflict between the two states' laws as they related to a specific legal claim). "[A] true conflict exists when 'two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result.' " *Pycsa*, 2008 WL 1775409, at *15 (citing *Walker v. Paradise Grand Hotel, Ltd.*, No. 01–3564, 2003 WL 21361662, at *5 (S.D.Fla. Apr.25, 2003)).

The plaintiff argues that no substantial differences exist between FDUTPA and the unfair trade practice laws of other states. "Most state consumer protection statutes ... are based on a model act promulgated by the Federal Trade Commission ('FTC') and the National Center of Commissioners on Uniform State Laws ("Uniform State Law Commission"). This model attempted to ensure a uniform means of protecting consumers from deceptive unfair trade or marketing practices." *See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE# 88 at 2, 2/5/08). In *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D.Fla.2002), this Court rejected the plaintiff's argument when it declined to certify a nationwide class action based on FDUTPA. The Court in *Montgomery* noted that "[w]hile some deceptive trade practices laws stem from common sources, they are not uniform. The result is a patchwork of rules

---

9. Dr. Cohen is the sole shareholder and president of William M. Cohen, D.M.D., M.S., Greater St. Louis Periodontics, P.C. *See* Affidavit of William M. Cohen (DE# 65 at Exhibit 1, 12/10/07).

10. It does not appear that the defendant sold the Implant Product to any customers in South Dakota. *See* Exhibit A to plaintiff's Supplemental Memorandum of Law in Support of Plaintiff's Motion for Class Certification (DE# 99, 3/12/08).

and standards reflecting the diverse policy judgments of lawmakers in fifty states." *Id.* at 229.

In the instant case, the defendant has identified numerous, concrete differences between the various unfair trade practice laws. For example: (1) some states have no private cause of action under their consumer protection laws or limit the right to a private action; (2) other states prohibit or restrict class actions; (3) some states require willful conduct while others do not require intent; (4) some states require a showing of reliance on the alleged deception and (5) in some states the action is limited to natural persons, while others allow businesses to sue. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 9–10, 1/14/08). The undersigned agrees with the defendant that there are true conflicts between FDUTPA and the comparable laws of the other states and the District of Columbia.

Specifically, with respect to Missouri, the undersigned finds that there is a true conflict between FDUTPA and Missouri's unfair trade practice statute, the Missouri Merchandising Practices Act, Mo.Rev.Stat. § 407.010 *et seq.*, (hereinafter "MMPA"). FDUTPA is not limited to consumer transactions.

> With the deletion of consumer transaction from FDUTPA, it would seem that such business entity consumers could sue for damages from outlawed acts and practices in ordinary business transactions without regard to whether the claimant was acting in the capacity of consuming goods or services. At least, nothing in section 501.211(2) purports to state otherwise.

*Beacon Prop. Mgmt., Inc. v. PNR, Inc.,* 890 So.2d 274, 278 (Fla. 4th DCA 2004) (emphasis in original). "The MMPA ... creates a private right of action, whereby '[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes' may file suit if he is harmed by the acts set forth in Section 407.020." *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.,* MDL No. 1672, 2006 WL 2632328, at *10 (E.D.Mo. Sept.13, 2006) (cit-

ing Mo.Rev.Stat. § 407.025.1). Section 407.020 states, in part, as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.

Mo Rev. Stat. § 407.020(1). At least one court applying Missouri law found that the plain language of the MMPA did not allow a consumer to sue under the MMPA where the consumer purchased services for a business purpose. *Id.* In the instant case, while the plaintiff may have a claim under FDUTPA, it may not have a cognizable claim under the MMPA because the plaintiff purchased the Implant Product for a business purpose.[11] Because both Missouri and Florida have a legitimate interest in the plaintiff's unfair trade practice claim and applying the law of these states would yield different results, a true conflict exists.

Having determined that a true conflict exists between FDUTPA and the laws of other states, the undersigned will apply Florida's conflict of laws rules to determine whether Florida law would apply to the unfair trade practice claims of every putative class member. In a diversity action, a district court will apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Florida utilizes the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 145 (1971) to determine which state's laws apply to tort claims, including FDUTPA. *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.,* 341 F.3d 1292, 1301 (11th Cir.2003), *cert. denied,* 541 U.S. 1037, 124 S.Ct. 2094, 158 L.Ed.2d 723 (2004); *Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221, 225 (S.D.Fla.2002) (applying the most significant relationships test to FDUTPA claim). Section 145 states as follows:

---

11. The undersigned is not making a legal determination as to the viability of the plaintiff's claim under Missouri law. Rather, the undersigned

uses this example to illustrate how there are true conflicts between FDUTPA and the laws of other states including Missouri.

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

   (a) the place where the injury occurred,

   (b) the place where the conduct causing the injury occurred,

   (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

   (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

Thus, in determining which state has the most significant relationship to the plaintiff's unfair trade practice claim, the Court must consider the foregoing factors set forth in section 145(2). The Restatement advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007) (citing Restatement (Second) of Conflict of Laws § 145).

The first contact is the place where the injury occurred. The Florida Supreme Court has observed that "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Bishop v. Fla. Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980). The comments to section 145 explain that:

> [i]n the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law . . . . [because] persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury.

Restatement (Second) of Conflict of Laws § 145 cmt. e (1971). However, "the place of injury is less significant in the case of fraudulent misrepresentations" than "in the case of personal injuries and of injuries to tangible things" or cases of false imprisonment and malicious prosecution. *Id.* § 145 cmt. f. Here, the parties agree that the injury took place in the different states where the Implant Product was implanted and failed at a higher rate than warrantied. Thus, the injury occurred in 49 states and the District of Columbia. With respect to the plaintiff, the injury occurred in Missouri. The plaintiff's FDUTPA claim is based on the sale of an unmerchantable good (the Implant Product) and alleged misrepresentations made by the defendant about the failure rate of the Implant Product. *See* Complaint (DE# 93 at ¶¶ 32–33, 2/27/08). Thus, the place of injury is not as significant in the instant case as it would be in a personal injury case and the undersigned will not assign significant weight to the first contact.

The second contact looks to the place where the conduct causing the injury occurred. Here, most of the components of the Implant Product were designed and manufactured in Florida with the exception of the shaping drills [12] which were manufactured in Switzerland. The marketing materials containing the alleged misrepresentations were presumably based in Florida [13] and the plain-

---

**12.** The shaping drills are important to the successful implantation of the defendant's product. "The implants incorporate a post that is cemented into a socket drilled into the jaw using customized shaping drills. . . ." The closeness of the fit between the post and the socket is a function of, among other factors, the customized shaping drills packaged as part of the Implant Product. If the shaping drills do not work properly, the socket will not closely match the post, thus leading to voids or gaps between the post and the jaw once the implant is placed. *See* Complaint (DE# 93 at ¶¶ 8–9, 2/27/08).

**13.** In its memorandum of law in support of class certification, the plaintiff asserted that the defendant's marketing and distribution efforts appeared to have been based in Florida. The defendant does not refute this assertion in its response. Therefore, the undersigned will presume that this fact is correct for purposes of this Report and Recommendation.

tiff received the offending marketing materials in Missouri.[14] Thus, the conduct causing the injury occurred in both Florida and Missouri.

The third contact examines the domicile, residence, nationality, place of incorporation and place of business of the parties. Here, this contact is neutral. The plaintiff is a Missouri corporation with its principal place of business in Missouri and the defendant is a Florida corporation with its principal place of business in Florida. *See* Complaint (DE# 93 at ¶¶ 1–2).

The last contact is the place where the relationship, if any, between the parties is centered. "When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." Restatement (Second) of Conflict of Laws § 145 cmt. e (1971); *see also Foster v. United States,* 768 F.2d 1278 (11th Cir.1985) (noting that the relationship between the parties should be narrowly defined). The plaintiff purchased the Implant Product from the defendant who is located in Florida. Dr. Cohen's affidavit does not disclose the logistics of how the plaintiff purchased the Implant Product, e.g. through a website, a sales call initiated by the defendant from Florida, an in-office visit by a sales person, etc.[15] It merely attests to the following:

> All of my orders for the [Implant Product] were sent to Garden City, Florida where to my knowledge they were filled by [the defendant] in Florida. Each of my transactions with [the defendant] were directed to people at [the defendant's] facilities in Florida and all of the [Implant Products] I received from [the defendant] were

shipped to me from Florida by [the defendant].

*See* Affidavit of Dr. Cohen (DE# 61, Exhibit 1 at ¶ 12, 12/7/07). The defendant argues, and the plaintiff does not specifically refute, that: "[the plaintiff] purchased the implants in Missouri, received the ostensibly offending marketing materials there ... and complained to the president of Biomet about the effectiveness of the implants there." *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 20, 1/14/08). Thus, it appears that the relationship between the plaintiff and the defendant is not centered in a single state. It is at least partially centered in Missouri and partially centered in Florida.

Having considered the factors of section 145, the undersigned must now consider the factors set forth in section 6 of the Restatement (Second) of Conflict of Laws. The Eleventh Circuit warned that:

> [the court] cannot simply add up the factors delineated in section 145(2) and then apply the law of the sovereign with the greatest numerical total.... Rather, [the court] must, as mandated by section 145(1), turn to the factors delineated in section 6 to determine which sovereign has the most significant contact.

*Judge v. Am. Motors Corp.,* 908 F.2d 1565, 1569 (11th Cir.1990) (internal citations omitted).

The principles stated in section 6 are as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> 2. When there is no such directive, the factors relevant to the choice of the applicable rule of law include

---

14. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 20, 1/14/08) (asserting that the marketing materials were received by the plaintiff in Missouri). The plaintiff did not dispute this assertion.

15. There is some evidence to suggest that at least some putative class members purchased the Implant Product as a result of an in-office visit by one of the defendant's sales representatives. Although there was no set sales protocol, *see* Declaration of David Josza (DE# 77, Exhibit C, 1/14/08), one of the defendant's former sales representatives, Bryan Moeslein, testified at deposition that as to certain dental professionals he would: "make the appointment ... usually get just in their lunch room or in their office and essentially show them the implant, show them the features and the benefits of the implant and explain those to them ... and then give them any supporting marketing materials that I had with me." *See* Deposition of Bryan Moeslein (DE# 77, Exhibit H at 12, 1/14/08).

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2). "The importance of these factors varies depending on the nature of the issue that underlies the conflict of laws." *Piamba Cortes*, 177 F.3d at 1299.

The first factor to consider is the needs of the interstate and international systems. This factor seeks "to further and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 cmt. d. Neither party has presented any arguments suggesting which law is favored by this factor. The undersigned finds that this factor is neutral.

The second, third, and fifth factors require a comparison of each interested state's policies and interests underlying the issues to be decided. The second and third factors consider "the relevant policies of the forum" and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," respectively. The commentary notes that "[i]n general, it is fitting that the state whose interests are most deeply affected should have its local laws applied." Restatement (Second) of Conflict of Laws § 6 cmt. f (1971). The fifth factor is the basic policies underlying the particular field of law. It requires consideration of which state's law "will best achieve the basic policy, or policies, underlying the particular field of law involved" in the dispute. Restatement (Second) of Conflict of Laws § 6 cmt. h.

As noted above, one of the stated purposes of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Missouri's unfair trade statute is the Missouri Merchandising Practices Act, Mo.Rev. Stat. § 407.010 *et seq.*, (hereinafter "MMPA"). "The purpose of the MMPA is 'to preserve fundamental honesty, fair play and right dealings in public transactions.' " *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777–78 (Mo.App.2008) (*Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo.App.2006)). Both statutes have similar policies.

The plaintiff argues that Florida has an interest in protecting individuals who do business with Florida corporations. However, with respect to the plaintiff's claim, Missouri also has an interest in protecting its citizens from deceptive and unfair trade practices particularly when the injury occurred within its borders. *See In re Ford Motor Co. Ignition Switch Products Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J.1997) (noting that "[e]ach plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws."). In the instant case, Missouri's policy interest would carry greater weight than Florida's corresponding interest because the injury occurred in Missouri and arose from a relationship that was partly centered in Missouri.[16] The plaintiff is a Missouri resident, all of the plaintiff's damages occurred in Missouri and part of the defendant's wrongful conduct (providing the plaintiff with offending marketing materials and an unmerchantable product) occurred in Missouri. The plaintiff has not shown why Florida would have a greater interest and concern than Missouri for the protection of a Missouri resident who was injured in Missouri as a result of wrongful conduct that occurred, in part, in Missouri arising out of a relationship that was partly centered in Missouri. Under the facts of the instant case, the section 6(2)(b), (c) and (e)

---

16. Although Missouri's MMPA may, or may not, apply to the plaintiff's unfair trade practice claim, Missouri has the right to delineate other legal remedies to protect the plaintiff.

factors weigh in favor of applying Missouri law.

The fourth and sixth factors favor Florida law. The fourth factor seeks to protect the parties' justified expectations. The sixth factor requires the Court to consider the certainty, predictability and uniformity of result. "Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions." Restatement (Second) of Conflict of Laws § 6 cmt. i (1971). As the plaintiff points out, the defendant chose Florida law to govern its warranty program. The 3i Five Year Warranty Program states that "[it] is governed by the laws of Florida without regard to conflict of laws principles." 3i Five Year Warranty Program (DE# 65 at Exhibit 1, 12/10/07). Although the plaintiff's unfair trade practice claim is not premised on the defendant's Five Year Warranty Program, the Court may consider the choice of law provision in the defendant's warranty program in its conflict of laws analysis. *See Renaissance Cruises, Inc. v. Glassman,* 738 So.2d 436 (Fla. 4th DCA 1999) (court considered the forum selection clause on passenger ticket as favoring the application of Florida law under a conflict of laws analysis for claim that was not based on passenger ticket).

The last factor is the ease in the determination and application of the law to be applied. This factor slightly favors the application of Florida law. *See Pycsa Panama S.A. v. Tensar Earth Technologies, Inc.,* No. 06-20624, 2008 WL 1775409, at *28 (S.D.Fla. Apr.16, 2008) (noting that the district court, often sitting in diversity, had experience researching, analyzing and applying Florida law). However, researching, analyzing and applying Missouri law would not be particularly difficult. This factor is likely to play a more important role where the law of the interested state is not easily ascertainable, such as in the case of a foreign sovereign. Under the facts of the instant case, the slight ease in applying Florida law would not be significant enough to outweigh any of the other factors.

▮ Based on the foregoing analysis, the undersigned concludes that Missouri has the most significant relationship to the plaintiff's unfair trade practice claim. Although the

Implant Product was, for the most part, manufactured in Florida and, presumably, the offending marketing materials were based in Florida, the plaintiff received the marketing materials and the Implant Product in its home state of Missouri. It is undisputed that the plaintiff was injured in Missouri. The Implant Product failed in Missouri causing the plaintiff economic injury in Missouri, however, the Court will not accord significant weight to the place of injury in the instant case. Additionally, although the protection of justified expectations and the certainty, predictability and uniformity of result favor the application of Florida law, they are not sufficient to overcome the more important considerations of the second, third and fifth factors of section 6(2) in the instant case.

Because Missouri, and not Florida, has the most significant relationship to the plaintiff's unfair trade practice claim, the plaintiff does not have standing to assert a FDUTPA claim on behalf of each putative class member. *See Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221, 225–26 (S.D.Fla.2002) (finding that plaintiff lacked standing to bring an action under FDUTPA where his claim was more appropriately brought under Texas' deceptive trade practice act). As such, the plaintiff has not satisfied the typicality requirement with respect to its unfair trade practice claim.

The plaintiff cites to *Renaissance Cruises, Inc. v. Glassman,* 738 So.2d 436 (Fla. 4th DCA 1999) in support of its argument that Florida law (FDUTPA) should apply to the plaintiff's claim and the claims of all putative class members. In *Renaissance,* passengers brought a FDUTPA claim against a cruise line for collecting port charges from passengers and keeping the difference between the actual port charges and the amounts paid by the passengers. The trial court applied FDUTPA to the nationwide class action even though most of the class members were not Florida residents and did not purchase their tickets in Florida. *Id.* at 437. In affirming the trial court, the appellate held that "Florida clearly ha[d] a significant contact with the claim of overpayment of port charges made by each claimant. There is nothing arbitrary nor fundamentally unfair in applying the law

of Florida to all of the members of the class." *Id.* at 439. The appellate court noted the trial court had supported its finding with the following Florida contacts:

> [The cruise line's] principal place of business is in Florida, and thousands of Florida plaintiffs have been allegedly harmed by [the cruise line's] port charge practice. For the most part, [the cruise line's] U.S. business operations are controlled and carried out from Broward County[, Florida] where payment for the cruises was made. The port charges generally were paid to the various foreign ports through checks issued out of Fort Lauderdale[, Florida]. Therefore, any overages were kept by [the cruise line] in Fort Lauderdale. The cruise ticket contract and marketing information originated in Broward county and bore appellant's Fort Lauderdale address. Moreover, the tickets provided that Broward County courts would have jurisdiction over disputes. This is indicative of the parties' mutual expectation that Florida law would apply to the transaction.

*Id.* at 439.

The undersigned finds that *Renaissance* is distinguishable from the instant case because in *Renaissance* both the offending conduct and the injury [17] took place in Florida. This is an important distinction. *See* Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) (noting that "[w]hen the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, the state will usually be the state of the applicable law with respect to most issues involving the tort."). Here, the parties agree that the injury occurred in the plaintiff's home state of Missouri. Additionally, some of the offending conduct occurred in Missouri. The defendant submitted the offending marketing materials to the plaintiff in Missouri and shipped the Implant Product to that state where the product subsequently failed. *See Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094 (Fla. 4th DCA 2003) (affirming trial court's conclusion that "the claims of non-resident consumers would require the application of consumer protection laws from each of the states where the deceptive trade practice occurred and the non-resident claimants suffered injury.").

### D. Adequacy

■ Rule 23(a)(4) " 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representative[ ] and the class; and (2) whether the representative[ ] will adequately prosecute the action.' " *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir.2003) (quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460–461 (N.D.Ala.2003)). The named plaintiff does not have any apparent interests that conflict with potential members of the class. The plaintiff appears to be involved in the litigation, providing affidavits in support of class certification. The defendant does not question the qualifications, experience or ability of plaintiff's counsel. Plaintiff's counsel appears to be well equipped to prosecute this action. Nonetheless, the undersigned finds that the adequacy requirement is not satisfied here with respect to the FDUTPA claim because the plaintiff does not have standing to assert this claim, *see* discussion *supra.*

Having carefully analyzed the Rule 23(a) requirements, the undersigned finds that with respect to the warranty claims, but for the deficient warranty class definitions, the plaintiff would have satisfied the numerosity, commonality, typicality and adequacy requirements. With respect to the FDUTPA claim, even if the plaintiff were to cure the defective FDUTPA class definition, the plaintiff has failed to satisfy the typicality and adequacy requirements because the plaintiff lacks standing to bring a FDUTPA claim.

### 3. Rule 23(b)(3) Requirements

The plaintiff seeks class certification under Rule 23(b)(3). Rule 23(b)(3) provides for the certification of a class where the prerequisites of Rule 23(a) are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members,

---

17. "The [trial] court ... found that since all payments for the cruise were made to [the cruise line] in Florida, class adjudication was superior

to individual actions in **that the common injury occurred in Florida.**" *Renaissance,* 738 So.2d at 438 (emphasis added).

and that a class action is superior to other available methods fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. In order to determine whether common questions predominate, [a court is] called upon to examine the cause[ ] of action asserted in the complaint on behalf of the putative class. Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. To qualify as a Rule 23(b)(3) class action, the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over the issues that are subject only to individualized proof. The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy and is far more demanding than Rule 23(a)'s commonality requirement. The most important consideration is the substantive law applicable to the case and the proof which will be necessary to establish the claim.

*Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 698 (S.D.Fla.2001) (internal quotations and citations omitted).

### A. Predominance

### i. Breach of Express Warranty

In the instant case, the plaintiff asserts claims for breach of express and implied warranties in Count I and II of the Complaint (DE# 93, 2/27/08). The plaintiff's breach of express warranty claim is based on representations made in marketing materials. *See* Affidavit of William M. Cohen (DE# 65 at Exhibit 1, ¶ 5, 12/10/07). The defendant argues that conflict of laws determinations preclude class treatment of the plaintiff's warranty claims. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 7, 1/14/08). "[I]ndividualized choice of law

determinations swamp any potential common questions and militate against class treatment." *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 7, 1/14/08). The defendant further argues that the plaintiff did not attempt to satisfy its burden of showing the lack of conflicts between the various states' warranty laws in its motion. *Id.* at 8.[18]

In its reply, the plaintiff limits the class definition for its breach of express warranty claims to:

> all periodontists, oral surgeons, and similar medical-dental professionals (or, as applicable, their professional corporations or other corporate entities) in Alabama, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Montana, New York, North Carolina, North Dakota, Pennsylvania, South Carolina, South Dakota, Vermont, Virginia and West Virginia who purchased the Implant Product in the United states, received marketing materials about Implant Product's success rate, and have had to replace the Implant Product at a rate higher than warrantied within the applicable statute of limitations.

*See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE# 88 at 8–9, 2/5/08). According to the plaintiff, the laws in these states and the District of Columbia do not require reliance.

The parties dispute which document or documents give rise to an express warranty. The defendant argues that its only warranty was contained in the document entitled "3i Five Year Warranty Program." The Five Year Warranty Program contains a choice of law provision which states that Florida law applies to the warranty program. *See* 3i Five Year Warranty Program (DE# 65 at Exhibit 1, 12/10/07). The plaintiff counters that it never received the Five Year Warranty Program and the defendant's marketing materials created an express warranty concerning the failure rate of the Implant Prod-

---

**18.** An analysis of the states' warranty laws was included in plaintiff's initial reply, which was stricken by the Court. *See* Footnote 2, *supra.*

uct. Because the plaintiff's breach of express warranty claim is based on marketing materials, the Court will need to conduct a conflict of laws analysis. "Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration." *Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc.,* 92 F.3d 1110, 1115 (11th Cir.1996).

The plaintiff seeks to bring a breach of express warranty claim on behalf of putative class members residing in 22 states and the District of Columbia. The plaintiff seeks to apply Florida's UCC to the warranty claims of all putative class members. The burden of presenting a sufficient choice of law analysis lies with the plaintiff. In its initial memorandum of law the plaintiff failed to present any choice of law analysis for its breach of warranty claims. Having failed to brief the issue, the plaintiff attempted to include a survey of warranty laws in its initial reply. The plaintiff's initial reply was stricken because the Court found that the reply appeared to raise new arguments. Even if the undersigned were to consider the warranty laws survey contained in the plaintiff's original reply, the undersigned finds that there are substantial differences between the warranty laws of the various states. Thus, a conflict of laws analysis is required.

Section 6(1) of the Restatement (Second) of Conflict of Laws, provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws § 6(1) (1971). Florida's UCC provides that "this code applies to transactions bearing an appropriate relation to this state." Fla. Stat. § 671.105(1). "Federal courts interpreting this phrase ... have taken into account the residence of the parties, the location of negotiations, the place of purchase of the goods, and the physical location of the goods at issue." *Premix–Marbletite Mfg. Corp. v. SKW Chemicals, Inc.,* 145 F.Supp.2d 1348, 1353–54 (S.D.Fla.2001) (citing *Hadar v. Concordia Yacht Builders, Inc.,* 886 F.Supp. 1082, 1093 (S.D.N.Y.1995)).

As noted above, the plaintiff resides in Missouri and the defendant in Florida. The Court should also consider the place of negotiation. The record does not disclose how the plaintiff purchased the Implant Product. One of the defendant's former sales representatives, Bryan Moeslein, testified at deposition that at least with respect to certain dental professionals, it was his practice to sell the product through in-office visits. *See* Deposition of Bryan Moeslein (DE# 77, Exhibit H at 12, 1/14/08). If the plaintiff purchased the Implant Product in a similar manner, then the place of negotiation would likely have been Missouri. However, there is no record evidence concerning how the plaintiff purchased the Implant Product.[19] Even if the plaintiff did not purchase the Implant Product through an in-office visit, the plaintiff ordered the product from his home state of Missouri. Thus, it appears that the negotiations partly took place in Missouri.

■ The Court should also consider the place of purchase and the physical location of the goods. The Implant Product was manufactured, for the most part, in Florida, shipped from Florida to Missouri and received by the plaintiff in Missouri. Thus, the plaintiff purchased the Implant Product in Missouri and it was implanted in patients in Missouri. Additionally, the economic injury occurred in Missouri. *See Premix–Marbletite Corp. v. SKW Chemicals,* 145 F.Supp.2d 1348, 1353–54 (S.D.Fla.2001) (taking into account place of injury in conflict of laws analysis on breach of warranty claim). Taking these factors into account, Missouri law has an appropriate relation to the transactions at issue. As such, Missouri law should apply to the plaintiff's breach of express and implied warranty claims. Similarly, the law of the state of each putative class member would apply to his or her warranty claim. Because individual legal issues predominate, the plaintiff cannot satisfy the predominance requirement of Rule 23(b)(3).

Even if the undersigned were to conclude that Florida law applies to the claims of all

**19.** It is unlikely that Mr. Moeslein sold the Implant Product to the plaintiff since Mr. Moeslein's sales territory did not include Missouri.

putative class members, individual factual questions preclude a finding of predominance.

The parties do not agree on whether Florida requires reliance on a claim for breach of express warranty. The plaintiff argues that proof of reliance is not required. *See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE # 88 at 9, 2/5/08) (citing *Southern Broad. Group, LLC v. Gem Broad., Inc.*, 145 F.Supp.2d 1316, 1321 (M.D.Fla.2001)). The defendant counters that justifiable reliance is an essential element of proof for a claim of breach of express warranty. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 13–14, 1/14/08) (citing, *inter alia, Thursby v. Reynolds Metals Co.*, 466 So.2d 245, 250 (Fla. 1st DCA 1984)). The Florida Supreme Court has not decided this issue.

The undersigned does not need to decide whether reliance is an essential element of a breach of express warranty claim in determining whether the plaintiff has satisfied the predominance requirement. Even if reliance is not required, individual factual issues would still predominate. Each putative class member would have to show that he or she was injured as a result of the defendant's breach of warranty. *See* Fla. Stat. § 672.313; *Dunham–Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So.2d 351, 353 (Fla. 4th DCA 1977) (noting that in order to properly plead a cause of action for breach of express or implied warranty under Florida's UCC, a complaint should include allegations concerning the injuries sustained by the buyer as a result of the breach of warranty).

The notice requirement also creates individualized questions of fact. The buyer must notify the seller that the goods are nonconforming in order to recover damages for breach of either an express or implied warranty. The notice requirement is contained in Fla. Stat. § 672.607(3)(a) which provides that "[w]hen a tender has been accepted the buyer must within a reasonable time after he or she discovers or should have discovered

any breach notify the seller of breach or be barred from any remedy. . . ." "[T]he burden is on the plaintiff to show that he gave the required notice within a reasonable time." *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262 (Fla. 2d DCA 1980). In the instant case, each putative class member would have to show that he or she gave the defendant notice within a reasonable time. What constitutes a reasonable time is a highly individualized factual determination for each putative class member and will depend on differing facts and circumstances. In the instant case, the putative class members purchased the Implant Product at different times and in varying quantities. What is considered a reasonable time for one putative class member would not necessarily be considered reasonable for another. Thus, in determining reasonableness each putative class member's individual circumstances must be taken into account. The plaintiff argues that "the complaint serves as requisite notice by Plaintiff and the putative class of their warranty claims." However, the undersigned is not persuaded by the plaintiff's argument because it would obviate the need for the notice requirement. Based on the foregoing, the undersigned concludes that individual factual and legal questions predominate the plaintiff's breach of express warranty claim.

### ii.  Breach of Implied Warranty[20]

The plaintiff's breach of implied warranty claim is based on Florida's Uniform Commercial Code. *See* Complaint (DE# 93 at ¶ 28, 2/27/08). The plaintiff alleges that the defendant violated Florida's implied warranty of merchantability, Fla. Stat. § 672.314, because the Implant Product was not fit for the ordinary purpose for which dental implants are used and the Implant Product was not adequately contained, packaged or labeled. *Id.* at ¶ 29. The plaintiff further alleges that the defendant violated the implied warranty of fitness for a particular purpose, Fla. Stat. § 672.315, because the

---

**20.** At the oral argument, the undersigned questioned the plaintiff's counsel on how he intended to satisfy Rule 23(b)(3) when the breach of implied warranty claim required reliance. The plaintiff's counsel advised the undersigned that

he intended to proceed on the breach of express warranty claim but was not dismissing the implied warranty claim because he had not conducted sufficient discovery to remove the claim.

defendant had reason to know when it sold the Implant Product that it would be implanted into the jaws of patients and that dental health care providers would rely upon the defendant for its skill in furnishing suitable dental implants but that the Implant Product was not fit for implantation into the jaws of patients. *Id.* at ¶ 30.

█ The parties agree that reliance is a necessary element of a breach of implied warranty claim. Here, each putative class member would have to show reliance on an individualized basis. They would also have to show notice, which would need to be determined on an individualized basis, *see* discussion supra. Additionally, in order to establish liability, each putative class member would have to show that the implied breach of warranty was the proximate cause of the putative class members' loss. *See Borrell–Bigby Elec. Co., Inc. v. United Nations, Inc.,* 385 So.2d 713, 715 (Fla. 2d DCA 1980) (reversing jury verdict for plaintiff on claim for breach of implied warranty where plaintiff could not show that defendant's breach was the proximate cause of plaintiff's loss). As noted above, the Implant Product could fail as a result of improper placement by the doctor or where the patient was not a candidate. Thus, each putative class member would have to show that the Implant Product they purchased failed as a result of a defect in the product. *See Amoroso v. Samuel Friedland Family Enterprises,* 604 So.2d 827, 833 (Fla. 4th DCA 1992) (noting that one of the elements required to prove liability under an implied warranty theory is that the defect caused the injury). Based on the foregoing, individual factual and legal issues predominate the breach of implied warranty claim.

### iii. FDUTPA

█ As discussed above, the undersigned finds that FDUTPA would not apply to the claims of every class member under Florida's conflict of laws rules. The Court would have to make legal inquiries concerning the consumer protection laws of 49 states and the District of Columbia. As such, individualized legal questions predominate over common questions with respect to the plaintiff's FDUTPA claim.

Even if the Court were to apply FDUTPA to the claims of every class member, individualized questions of fact predominate precluding class certification. As the defendant points out, each putative class member would have to show that it received the sales brochures or other marketing materials in which the defendant's representation of a 2% failure rate was made. *See* Biomet's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (DE# 77 at 16–17, 1/14/08). In the instant case, the defendant did not provide its customers with a uniform set of marketing materials. "Each sales representative has a sales package for each product. The package includes information regarding the rationale for developing the product, the applications it's intended for, the purpose of the product, etc. However, there is no standard package of materials that is given to doctors during sales visits . . . . [T]he sales representative provides the doctor with brochures and documents regarding specific products based on the doctor's particular needs and interests." *See* Declaration of David Josza (DE# 77, Exhibit C at ¶ ¶ 8, 10, 1/14/08). Thus, not every putative class member received the same marketing materials that the plaintiff received. Whether each putative class member received or was exposed to the defendant's marketing materials is an individualized question of fact in the instant case.

Causation also presents an individualized question. Each putative class member would have to prove causation in order to establish the defendant's liability under FDUTPA. *See Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006) (noting that the elements of FDUTPA are (1) a deceptive act or unfair practice (2) causation and (3) actual damages). As noted in *Montgomery,* 209 F.R.D. at 229–230: in order to prove liability under FDUTPA, the Court must determine that

(1) each putative class member was exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice and (2) if exposed, the advertising and marketing materials caused each putative class member damage. Such inquiries would result in a series of mini-trials for each putative class

member on the issue of causation, which strongly militates against a finding of predominance.

In the instant case, the defendant has shown that the failure of the Implant Product could be due to a number of reasons including use of the Implant Product on a patient who was not a candidate and mistakes made by the doctor in inserting the Implant Product. Thus, to determine causation, the Court would have to engage in the same mini-trials contemplated in *Montgomery.*

The plaintiff argues that it does not have to show that each putative class member received the offending marketing material because its FDUTPA claim is also based on the defendant's omissions. "3i concealed from its clients that the NT Certain Implant was failing at an unacceptable level. Without this critical disclosure, 3i clients were unable to make educated judgments about whether to purchase the product." *See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification (DE# 88 at 5, 2/5/08). The undersigned notes that the FDUTPA claim, as pled in the Complaint, does not allege that the defendants withheld or concealed information. Rather, it alleges that "Defendant 3i violated [FDUTPA] by making deceptive *representations* and selling unmerchantable tools in connection with the conduct of trade or commerce." Complaint (DE# 93 at ¶ 33, 2/27/08) (emphasis added). "It is not the Court's role to amend the pleadings for the Plaintiff to articulate a claim that would meet the requirements of Rule 23 where the causes of action as presented do not." *O'Neill v. The Home Depot U.S.A., Inc.,* 243 F.R.D. 469, 481 (S.D.Fla.2006).

To the extent that by "omissions," the plaintiff means that the defendant failed to advise customers that the Implant Product was unmerchantable, individual issues would still predominate because each putative class member must show causation. "In order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act." *Macias v. HBC of Fla., Inc.,* 694 So.2d 88, 90 (Fla. 3d DCA 1997); *see also Marino v. Home Depot U.S.A., Inc.,* 245 F.R.D. 729

(S.D.Fla.2007) (noting that causation was an element of FDUTPA in an action based on defendant's failure to disclose information). Thus, even if the plaintiff's FDUTPA claim is partially based on omissions by the defendant, individual fact questions would still predominate.

### B. Superiority

▆▆▆ The plaintiff argues that class treatment is superior to hundreds or thousands of individual actions which could yield inconsistent results. "Even if damage issues are ultimately tried individually, the efficiencies gained by use of a class action will ultimately benefit all of the class members and the defendant by a dramatic reduction in litigation expenses." *See* Memorandum of Law in Support of Plaintiff's Motion for Class Certification (DE# 61 at 17, 12/7/07). The defendant counters that a class action would not be manageable under the facts of the instant case because individualized analysis would have to occur as to each class member.

Because individual factual and legal issues predominate, a class action proceeding in the instant case would be unmanageable. Additionally, at least with respect to the FDUTPA claim, a class action is not the superior or only mechanism for resolving this claim. Individuals who have standing to bring a FDUTPA claim would not be deterred by the nominal value of their claims because FDUTPA allows a prevailing party to recover attorney's fees. *See Marino v. Home Depot U.S.A., Inc.,* 245 F.R.D. 729, 737 (S.D.Fla. 2007) (noting that class action was not superior or only method of adjudication of FDUTPA claim because FDUTPA provides for attorney's fees). The undersigned concludes that a class action in the instant case would not be the superior method of adjudication.

In sum, the plaintiff cannot satisfy Rule 23(b)(3) with respect to either its warranty claims or FDUTPA claim. The undersigned finds that individualized issues of law predominate as to all claims because the Court would have to apply the laws of the various interested states. Additionally, with respect to the breach of express warranty claim, notice and a showing that the putative class member's injury was caused by the defen-

dant's breach would have to be established on an individualized basis. With respect to the breach of implied warranty claim, each putative class member would have to show reliance. Individual factual determinations also predominate as to the FDUTPA claim because each putative class member would have to show that it received the marketing materials and that it was harmed as a result of the defendant's offending conduct. Because individual factual and legal issues predominate, the plaintiff cannot show that a class action would be the superior method of adjudication. Additionally, with respect to the FDUTPA claim, putative class members would not be deterred from prosecuting even nominal claims because FDUTPA provides for an award of attorney's fees to the prevailing party.

## CONCLUSION

The plaintiff is not entitled to class certification on the warranty claims. The undersigned concludes that, had the plaintiff proposed workable warranty class definitions, the plaintiff would have satisfied the numerosity, commonality, typicality and adequacy requirements of Rule 23(a). Nonetheless, the plaintiff is not entitled to class certification of its warranty claims because the plaintiff failed to satisfy the requirements of Rule 23(b)(3).

With respect to the FDUTPA claim, even if the plaintiff were to cure the defective FDUTPA class definition, the plaintiff cannot satisfy the typicality and adequacy requirements of Rule 23(a) because the plaintiff lacks standing to bring a FDUTPA claim. Alternatively, if the Court were to conclude that the plaintiff has standing and a nationwide class action based on FDUTPA could be maintained, the plaintiff is not entitled to class certification of its FDUTPA claim because it cannot satisfy predominance under Rule 23(b)(3).

Based on the foregoing, the undersigned concludes that class certification is not warranted for either the warranty claims or the FDUTPA claim in the instant case.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion for Class Certification (DE# 60, 12/07/07) be DENIED. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within ten (10) days of receipt of a copy of this Report and Recommendation. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this *13th* day of June, 2008.

