766 So.2d 350 (2000)
Robert M. TUNE, Appellant,
v.
PHILIP MORRIS INCORPORATED, Appellee.
No. 2D99-679.
District Court of Appeal of Florida, Second District.
July 14, 2000.
*351 Howard M. Acosta, St. Petersburg, for Appellant.
A. Broaddus Livingston of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa; Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg; and Matthias A. Lydon of Winston & Strawn, Chicago, for Appellee.
ALTENBERND, Judge.
Robert M. Tune appeals a final summary judgment ruling in favor of Philip Morris Incorporated. We conclude that the trial court incorrectly applied a New Jersey statute of limitations and a New Jersey product liability act to bar a personal injury action that accrued and arose in Florida. Accordingly, we reverse and remand for further proceedings.
Mr. Tune began smoking cigarettes as a teenager in the early 1940s. In 1948, he began smoking Marlboro cigarettes, which are manufactured by Philip Morris. For most of his life, Mr. Tune lived in New Jersey. Accordingly, he purchased his Marlboro cigarettes from retailers in that state. In late 1989 or 1990, Mr. Tune moved to Pinellas County, Florida, and *352 became a permanent Florida resident. At that time, he was still smoking one or two packs of Marlboro cigarettes a day. In 1994, he was diagnosed with cancer of the larynx and underwent a laryngectomy. He quit smoking in 1994, but was diagnosed with lung cancer in 1998. Mr. Tune received most, if not all, of his medical treatment in Pinellas County, Florida.
Mr. Tune filed a personal injury lawsuit against Philip Morris on July 9, 1997, in the Sixth Judicial Circuit. After a period of discovery, Philip Morris filed a motion for summary judgment in December 1998, claiming that New Jersey law controlled in two material respects. First, New Jersey has a two-year statute of limitations that would bar the action concerning cancer of the larnyx that accrued in 1994. Compare N.J. Stat. Ann. 2A:14-2 (1997) (two-year statute of limitations for negligence claims) with § 95.11(3)(a), Fla. Stat. (1997) (four-year statute of limitations for negligence claims). Second, the New Jersey Legislature passed a product liability act in 1987 that avoids manufacturer or seller liability for a product if "the characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended." See 1987 N.J. Laws 197 (1987) (presently codified at N.J. Stat. Ann. 2A:58C-1 (1999)). Although Philip Morris denied that Marlboro cigarettes cause lung cancer, it maintained that Mr. Tune, as a member of the class of persons for whom Philip Morris intended its product, knew cigarettes caused cancer.[1]
The trial court performed a conflict-of-laws analysis using the "significant relationship" test. See Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980) (adopting the test from Restatement (Second) of Conflict of Laws §§ 145, 146 (1969)). Under this analysis, the trial court agreed with Philip Morris that the undisputed facts required it to apply New Jersey law and granted a final summary judgment. Because the trial court made this conflict-of-laws decision in the context of a motion for summary judgment in which the material facts surrounding the choice were not disputed, we review the issue de novo as a matter of law. See Menendez v. Palms W. Condominium Ass'n, 736 So.2d 58, 60-61 (Fla. 1st DCA 1999); cf. Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1031 (5th Cir.1984) (holding trial court's choice of law in international/maritime context is reviewed de novo).

I. THE CASE APPEARS TO INVOLVE A FALSE CONFLICT
As a threshold issue, we are not convinced that this case involves a "true" conflictone in which two states have conflicting interests. A false conflict can exist under at least three different circumstances. It can exist when the laws of different states are (1) the same, (2) different but would produce the same outcome under the facts of the case, or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws. See generally Greaves v. State Farm Ins. Co., 984 F.Supp. 12, 14 (D.D.C.1997), aff'd, 172 F.3d 919 (D.C.Cir.1998). Although the Restatement does not expressly discuss "false conflicts," its contributors and subsequent scholars have recognized that a comprehensive conflict-of-laws analysis should not be required when only one state has a legitimate interest in the law to be applied. See Michael S. Finch, Choice-of-Law *353 Problems in Florida Courts: A Retrospective on the Restatement (Second), 24 Stetson L.Rev. 653, 662-63, n.43 (1995). In addition, the factors in section 6(b) of the Restatement (Second) of Conflict of Laws (1969) heavily emphasize the relevant policies of competing jurisdictions.
If this case involves a false conflict, it involves the third variety. We note that this variety of false conflict is essentially a situation in which the "significant relationships" should heavily, if not exclusively, favor one state. Thus, the more comprehensive Restatement analysis should always reach the same result as the quicker decision under a false conflict analysis.
In this case, New Jersey would appear to have no interest in advancing the policies expressed in its shorter statute of limitations or its more restrictive product liability law. No New Jersey retailer, resident, or other defendant is involved in this suit or would appear to have any plausible risk of being held responsible for the claims made in this lawsuit. Although New Jersey probably reaped the benefit of certain taxes upon the sale of these cigarettes, the social costs of Mr. Tune's injuries will be born by the people of Florida and have no perceptible effect upon the people of New Jersey. It is unlikely that New Jersey would believe that an international corporation supplying consumer products within its territory would take action adverse to the interests of the citizens of New Jersey merely because Florida allowed a plaintiff to maintain a lawsuit such as this for diseases that manifested themselves in Florida after the plaintiff smoked for years in Florida. Simply put, New Jersey has little or no stake in this case; it has nothing to gain or lose through this lawsuit. There is no reason why a Florida court should feel constrained to obey New Jersey laws that would limit or restrict this Florida citizen's access to a Florida court or to the remedies that a Florida court would otherwise provide.

II. THE MORE COMPREHENSIVE RESTATEMENT ANALYSIS
Even if New Jersey did have a stake in this matter, we are convinced, under the "significant relationship" analysis, neither the New Jersey statute of limitations nor its limitation upon product liability would trump the law of Florida as the place of injury.
Both parties agree that Florida applies the "significant relationship" test concerning conflict of laws in tort cases. See Bishop, 389 So.2d at 1001; § 95.10, Fla. Stat. (1997); see also Merkle v. Robinson, 737 So.2d 540 (Fla.1999) (holding "significant relationship" test applies to statute of limitation choice-of-law questions); Bates v. Cook, Inc., 509 So.2d 1112, 1114-15 (Fla. 1987) (holding the "significant relationship" test applies in conflict-of-laws questions regarding statutes of limitations in tort cases).
This court has previously explained the analytical structure the Restatement (Second) of Conflict of Laws (1969) requires for such a choice-of-law question. See Mezroub v. Capella, 702 So.2d 562, 564-65, (Fla. 2d DCA 1997). We repeat that discussion:
Thus, we must apply certain choice-of-law provisions from the Restatement.... Section 146 provides:
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in s[ection] 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Section 145 provides:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence *354 and the parties under the principles stated in s[ection] 6.
(2) Contacts to be taken into account in applying the principles of s[ection] 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Section 6 of the Restatement (Second) Conflict of Laws (1969) provides:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice-of-law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Under these guidelines, the choice of applicable law is determined for each particular issue. See Crowell v. Clay Hyder Trucking Lines, Inc., 700 So.2d 120 (Fla. 2d DCA 1997); Department of Corrections v. McGhee, 653 So.2d 1091 (Fla. 1st DCA 1995). The place of injury still determines which state's law applies, unless some other state has a more "significant relationship" to the issue. The significant relationship is assessed by examining the enumerated factual "contacts" in section 145(2), which are to be taken "into account" while applying the general principles of section 6. This is not a simple "center of gravity" or "contacts counting" test. Rather, the court must determine which state or states have a true interest in the application of their law, by examining the various factual contacts in light of the rather malleable principles set forth in section 6. If only one state is interested in the tort issue, the court should apply the law of that state. If two or more states are interested, then the court must determine which state has a dominant interest and apply the law of that state. If no state has a clearly dominant interest, then the court should apply the law of the place of injury as explained in section 146.
Mezroub, 702 So.2d at 565.
Here, the trial court seems to conclude, and we agree, that the state where Mr. Tune's "injury" occurred must be Florida.[2]See Celotex Corp. v. Meehan, 523 So.2d 141 (Fla.1988) (holding that cause of action for injury due to asbestos exposure accrues at time of diagnosis). See also Baird v. American Med. Optics, 155 N.J. 54, 713 A.2d 1019, 1024 (1998) (applying "discovery rule" in determining when cause of action for similar injuries accrues under New Jersey law). The possibility that Mr. Tune's injury is the result of years of exposure to cigarette smoke, a possibility that is not an established fact in this record, does not convince us that we *355 should assume a place of injury, at least for a conflict-of-laws analysis, that is based on the primary place of exposure to smoke as compared to the last substantial place of exposure. This is especially true when the actionable, symptomatic, or diagnosable disease manifested itself in the last substantial place of exposure to the product. Thus, it is the burden of Philip Morris to persuade the court to apply New Jersey law in this case by showing that New Jersey has a more significant relationship to the case. See Restatement (Second) of Conflict of Laws § 145(2)(1969). This burden has not been met.

A. The Applicable Statute of Limitations.
Concerning the applicable statute of limitations, the significant relationships support use of Florida's statute of limitations.[3] This claim did not "arise" in New Jersey for purposes of our borrowing statute. See § 95.10, Fla. Stat. (1997); Bates, 509 So.2d 1112. For purposes of section 145(2), the injury occurred in Florida, and the conduct causing injury occurred in Florida for several years prior to the medical diagnosis. Mr. Tune is domiciled in and a resident of Florida. Philip Morris does business in Florida and has no greater connection to New Jersey than to Florida. To the extent that a manufacturer of such a consumer product, which is nationally or internationally marketed and advertised and is consumed over a long period, has a "relationship" with any ultimate consumer, that relationship cannot reasonably be "centered" in any specific community in our mobile society.
We have already discussed some of the policy issues that are considered within the factors enumerated in section 6 of the Restatement. These factors are admittedly difficult to apply. Nevertheless, we are unconvinced that interstate or international considerations warrant Florida's adoption of New Jersey's statute of limitations in this case.
The relevant policies of Florida support the application of Florida's statute of limitations. Florida owes much of its prosperity to the people who have chosen to retire here from other states. We must have strong policies to protect the people who make Florida their home during retirement. At a minimum, these citizens are entitled to the same period in which to file a tort claim as native Floridians when they sustain injuries or develop diseases long after they choose Florida as their home.
We would be more inclined to apply New Jersey's statute of limitations if Philip Morris had a justified expectation that this law applied. However, from Philip Morris's perspective, the New Jersey connection in this lawsuit is merely fortuitous. Mr. Tune could have purchased his Marlboro cigarettes in any state prior to settling in Florida. Finally, case in determination and application of the law supports the use of Florida's statute of limitations in Florida courts.
Overall, Florida clearly has the more significant relationships with this lawsuit as to the issue of statute of limitations and is fully justified in following the statute of limitations established by its own legislature.

B. Product Liability Law.
Concerning the New Jersey product liability act, we would note that the contacts analysis under section 145 of the Restatement is essentially the same as that used to select the applicable statute of *356 limitations. In considering the factors under section 6, if anything, a Florida court has greater reason to apply its own substantive tort law to protect its citizens than its statutes of limitations. If tort law concerning smoke-related claims were based on the law of the various forums in which a plaintiff smoked, then determining the applicable law could be most difficult. Especially under circumstances where the legislative policy of New Jersey was adopted near the end of Mr. Tune's residency in that state and there is no suggestion that he moved to Florida to select a more favorable forum, the factors in section 6 weigh in favor of Florida, not New Jersey.
Because Florida law permits Mr. Tune's claim, we reverse and remand the cause for further proceedings consistent with this opinion.
PATTERSON, C.J., and SALCINES, J., Concur.
NOTES
[1] Because we conclude that New Jersey policies and statutes do not govern this Florida lawsuit, we have no occasion to decide whether Philip Morris can continue to deny that its product causes cancer and, at the same time, maintain that its customers knew, as a matter of law, of this specific risk.
[2] The trial court then concluded, nevertheless, that Celotex Corp. v. Meehan, 523 So.2d 141 (Fla.1988), required application of New Jersey law, because in Celotex Corp. the supreme court found the place of diagnosis was not the controlling factor in determining significant contacts. In Celotex, however, all conduct giving rise to the injury occurred in the foreign state, and only residency and diagnosis connected the injury to Florida.
[3] The Restatement has a specific provision dealing with statute of limitations conflicts. See Restatement (Second) of Conflict of Laws § 142 (Supp.1998). Under this section, Florida should apply its statute of limitations to allow Mr. Tune's claim unless to do so would serve no substantial interest of Florida and the claim would be barred under the statute of limitations of another state having a more significant relationship to the parties and the occurrence. Under this analysis, the Florida statute of limitations would apply. The courts of our state have not specifically adopted this provision, though there has been support for it. See Merkle v. Robinson, 737 So.2d 540, 542-43 (Fla.1999) (Harding, C.J., concurring; Wells, J., dissenting); Mezroub v. Capella, 702 So.2d 562, 566 n. 6 (Fla. 2d DCA 1997).