Francois Robert GEVAERTS, Christian Holstein Gevaerts, Alexander Casper Holstein Gevaerts, Pieter Schaffels, and Schaffels Beheer B.V., individually and on behalf of all others similarly situated, Plaintiffs,

v.

TD BANK, N.A., Deborah C. Peck, Dennis Moens, Simon Franciscus Wilhelmus Laan, Watershed LLC, Zilwood S.A., Running2 Limited, Best Invest Europe, Ltd., Jennifer J. Hume, Jennifer J. Hume, C.P.A., P.C., Defendants.

Case No. 1:14–CV–20744.

United States District Court, S.D. Florida.

Signed Oct. 30, 2014.

Filed Oct. 31, 2014.

Brett Elliott Von Borke, Seth Eric Miles, Grossman Roth, P.A., Ryan K. Stumphauzer, O'Quinn Stumphauzer PL, Ryan Dwight O'Quinn, Miami, FL, Rachel Wagner Furst, David Buckner, Grossman Roth, P.A., Coral Gables, FL, for Plaintiffs.

Audrey M. Pumariega, Marcos Daniel Jimenez, McDermott Will & Emery LLP, Miami, FL, Mark W. Kinghorn, Peter J. Covington, William O.L. Hutchinson, McGuire Woods, LLP, Charlotte, NC, for Defendants.

Jennifer J. Hume, Boca Raton, FL, pro se.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

ROBIN L. ROSENBERG, District Judge.

This matter is before the Court on Defendant TD Bank's Motion to Dismiss [DE 44]. The Motion has been fully briefed by both sides. The Court has reviewed the documents in the case file, has heard oral argument by the Parties on October 17, 2014, and is fully advised in the premises. For the reasons set forth below, TD Bank's Motion is denied.

### I. BACKGROUND

Plaintiffs allege that Defendant Peck, along with Defendants Dennis Moens and Simon Laan, masterminded a multi-layered, multi-national fraudulent scheme centered in Florida and aimed at soliciting foreign investments in Florida life settlement offerings safeguarded in Florida trusts. DE 37 at ¶¶ 13–15, 27, 29. The scheme allegedly unfolded as follows: Peck, Moens, and Laan, individually and through various special purpose entities, acquired viaticated U.S. life insurance policies from life settlement providers in Florida. *Id.* at ¶¶ 16–20, 25–27. The policies were packaged with a bond and conveyed into Florida trusts formed and managed by Peck as trustee. *Id.* at ¶¶ 27, 29–30, 35–36. Peck and her partners then marketed and sold fractional participations in the Florida trusts from Florida to European investors, such as Plaintiffs. *Id.* at ¶¶ 14–15, 27, 29–30.

Investors wired their investment funds to various corporate entities operated by Peck, Moens, and Laan, which in turn would then wire the funds to Peck's trust accounts at TD Bank. *Id.* at ¶¶ 40, 90.

However, instead of using the funds to purchase the named life insurance policy, Peck is alleged to have used the funds to pay unrelated premium obligations or high rates of return to other investors. *Id.* at ¶¶ 51, 130–132. Plaintiffs now bring this action seeking to represent all investors who purchased interests offered by Peck, Moens, and Laan who were ultimately defrauded. *Id.* at ¶ 170.

Plaintiffs' claims against TD Bank are based, in large part, on the circumstances surrounding Peck's usage of TD Bank and TD Bank's responsibilities to the state bar of New Jersey. TD Bank maintains its executive offices in New Jersey. *Id.* at ¶ 22. Peck was a New Jersey licensed attorney. *Id.* at ¶ 13. Peck opened attorney trust accounts at a New Jersey branch of TD Bank.[1] *Id.* at ¶ 44. Under New Jersey Rule of Court 1:21–6, TD Bank was required to enter in an agreement with the New Jersey bar in order to host trust accounts for New Jersey attorneys. *Id.* at ¶ 42. That agreement requires TD Bank, *inter alia,* to report certain matters to the New Jersey bar in connection with attorney trust accounts. *Id.* at ¶ 43. For example, the agreement requires TD Bank to report when an attorney trust account is overdrawn. *Id.* at ¶ 85.

### II. LEGAL STANDARD

In considering a motion to dismiss, the Court must accept the allegations in a complaint as true and construe them in a light most favorable to the plaintiffs. *See Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1321 (11th Cir.2012). At the pleading stage, the Complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to

---

1. More specifically, the accounts were opened at a branch of Commerce Bank which was later acquired by TD Bank. *See* DE 37 at ¶ 24.

relief." Fed.R.Civ.P. 8(a)(2). All that is required is that there are "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## III. APPLICABLE LAW

 As an initial matter, Plaintiffs argue that New Jersey law applies to their claims against TD Bank. TD Bank argues that Florida law applies. A federal court sitting in diversity applies the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Before beginning a conflict of law analysis, however, a court should determine whether a conflict of laws truly exists. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234–35 (11th Cir.1995). No conflict of laws exists when the asserted conflict is a false conflict. *Tune v. Philip Morris, Inc.*, 766 So.2d 350, 352 (Fla.Dist.Ct.App.2000). A false conflict arises when (1) the laws of the different sovereigns are the same, (2) the laws of the different sovereigns are different but produce the same outcome under the facts of the case, and (3) when the policies of one sovereign would be furthered by the application of its laws while the policy of the other sovereign would not be advanced by the application of its laws. *Id.*

Plaintiffs have asserted four claims against TD Bank. With respect to Plaintiffs' first three claims—Count 5, Count 10, and Count 11—the Court finds that the asserted conflict of laws is a false conflict. The Court's decision on this matter is grounded in the Court's conclusion that the law of Florida and the law of New Jersey for these claims is the same.[2] Alternatively, even if the laws for these claims differ between Florida and New Jersey, the Court finds that the facts alleged in the Complaint, applied to the law of both jurisdictions under the motion to dismiss standard, would still result in the same outcome for the reasons more fully set forth below. The Court therefore applies Florida law to Count 5, Count 10, and Count 11.

With respect to Plaintiffs' fourth and final claim against TD Bank—Count 20—the Court still finds that the asserted conflict is a false conflict under the third criteria for false conflicts: the lack of competing policy interests. This is because Plaintiffs' fourth claim is premised upon (and pled under) a New Jersey statute that has no Florida equivalent. As such,

---

2. *Compare Lautenberg Found. v. Madoff*, 2009 WL 2928913, *16, 2009 U.S. Dist. LEXIS 82084, *47 (D.N.J. Sept. 9, 2009) ("[U]nder New Jersey law one who 'knowingly aids and abets the agent of another in breach of fiduciary duty is liable to the principal.' "), *with Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir.2014) ("[Aiding and Abetting elements in Florida are] (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."). Furthermore, at a hearing on October 17, 2014, the Parties essentially agreed that the elements for Count 5, Count 10, and Count 11 are the same or very similar under Florida and New Jersey law. TD Bank's premise for arguing Florida law should apply to Count 5 is that Plaintiffs have not alleged a cause of action for Count 5 under Florida law. TD Bank's premise for arguing Florida law should apply to Count 10 and Count 11 is essentially that Plaintiffs cannot establish actual knowledge or a duty to TD Bank under Florida law. As discussed more fully *infra* the Court finds that Florida law *can* support a finding of liability on these counts and Plaintiffs *have* alleged a valid cause of action under Florida law. Accordingly, this finding of the Court buttresses the Court's conclusion that there is no actual conflict of law between Florida and New Jersey on the above-referenced counts.

the Court finds that the policies of New Jersey are advanced by the application of its state statute to TD Bank in the context of (i) a New Jersey bank, (ii) holding New Jersey trust accounts, (iii) for a New Jersey lawyer, all (iv) in accordance with a contractual agreement between TD Bank and the New Jersey bar. By contrast, the policies of Florida are not clearly advanced by the application of Florida law where, as here, the result of the application of Florida law would be to preclude Plaintiffs from bringing their New Jersey claim entirely. The Court's determination on this matter is therefore based upon the policy interests of the respective sovereigns, juxtaposed and applied to the alleged facts in Count 20 of Plaintiffs' Complaint.

In the alternative, even if a conflict of law does exist between Florida law and New Jersey law for Count 20, due to a competing Florida policy interest, the Court still finds that New Jersey law should be applied. Florida's conflict of law test utilizes the "significant relationship" test for torts. *See Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999 (Fla.1980). The significant relationship test utilizes the following framework:

(1) A court, subject to constitutional restriction, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectation,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Many of the above-referenced factors do not apply in the context of torts. For example, the protection of justified expectation has no relevance for negligence actions as a negligent actor does not rationally possess justified expectations. *See* Restatement (Second) of Conflict of Laws § 145 cmt. b. A court applying section 6 principles in the context of tort claims should therefore consider the following:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

The presumption of the significant relationship test is that generally the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest. *See Bishop,* 389 So.2d at 1001. Here, it is not immediately clear where the alleged injury occurred. Plaintiffs are foreign citizens and arguably the alleged financial injuries occurred in Plaintiffs' home country, but much of the alleged fraudulent activity in the Complaint occurred in Florida. Some of the injury did arguably occur, however, in New Jersey due to the nature of Plaintiff's allegations against TD Bank and the fact that the trust accounts were opened there. Based upon the foregoing, the Court finds that an examination of other relevant section 6 and section 145 factors is necessary.

*Section 6 Factors.* As discussed above, the policy interests of New Jersey, in the context of Count 20, are significant. The allegations involve a New Jersey bank that has executed a contractual agreement with the New Jersey bar. That agreement was executed for the purpose of monitoring and reporting suspicious activity in New Jersey trust accounts created by New Jersey attorneys. New Jersey has a significant interest in seeing that these New Jersey based interests are protected by its laws. By contrast, it is not immediately apparent what policy interest Florida has in seeing that, via its own laws, a New Jersey remedy is unavailable to citizens of a foreign country. While it is true that the trusts utilizing the accounts in this case were Florida trusts, and while it is true that much of the alleged fraudulent activity in this case occurred in Florida, the allegations for Count 20 are directed towards a New Jersey bank that opened accounts for a New Jersey attorney. Moreover, while it is also true that the banking activity in this case could be considered to have occurred in Florida after the relevant accounts were opened, TD Bank has still failed to articulate a persuasive policy interest that Florida has in effectively nullifying a cause of action that New Jersey has created when Florida-based trusts are misused by a New Jersey attorney at the attorney's New Jersey bank and, as Plaintiffs have alleged, the New Jersey bank was aware of the attorney's fraud and provided, among other things, substantial assistance that enabled the fraud. Even if the Court were to conclude, however, that Florida has a policy interest in seeing, for example, that banks operating in Florida have limited liability towards third parties, this policy interest is undercut by the fact that Florida law does allow for recovery from banks by third parties under certain factual circumstances, as more fully detailed *infra.* In summary, the policy interests of New Jersey outweigh the policy interests, if any, of Florida.

*Section 145 Factors.* With respect to the location where the events giving rise to injury occurred, the Parties contest the location. Plaintiffs argue the conduct occurred in New Jersey. TD Bank argues the conduct occurred in Florida since banking transactions may be initiated in states other than the state where an account is opened. With respect to the location of the Parties, the respective locations could be considered to be New Jersey and a foreign country. With respect to where the relationship between the Parties was centered, this is a difficult question. The Parties had no direct relationship as Plaintiffs were third parties to the other Defendants' fraud. Some of the allegations in the Complaint do support the inference, however, that Plaintiffs were more than aware of TD Bank's location in New Jersey as well as the monitoring agreement TD Bank had with the New Jersey bar. *See* DE 37 at ¶¶ 80–83.

After weighing all relevant section 6 and section 145 factors, the Court finds that the factors in favor of applying New Jersey law outweigh the factors in favor of applying Florida law for Plaintiffs' Count 20. Accordingly, the Court applies Florida law to Count 5, Count 10, and Count 11 and applies New Jersey law to Count 20.

## IV. ANALYSIS AND DISCUSSION OF THE MOTION TO DISMISS

TD Bank argues that Plaintiffs' Complaint fails as a matter of law. TD Bank's arguments are best divided into four categories: (A) Count 5, (B) Count 10 and Count 11, (C) Count 20, and (D) Plaintiffs' class allegations. Accordingly, each of TD Bank's arguments is considered in turn.

### A. Count 5, Aiding and Abetting a Breach of Fiduciary Duty.

Plaintiffs allege in Count 5 that TD Bank aided and abetted a breach of fiduciary duty. The elements for this claim under Florida law are: (1) an underlying violation on the part of the primary wrongdoer, (2) knowledge of the underlying violation by the aider and abettor, and (3) the rendering of substantial assistance to the wrongdoer by the aider and abettor. *See Perlman v. Wells Fargo Bank, N.A.,* 559 Fed.Appx. 988, 993 (11th Cir.2014). TD Bank argues that Count 5 fails under the second element, knowledge, and the third element, substantial assistance.

To survive a motion to dismiss Plaintiffs must allege TD Bank had actual knowledge of the underlying fraud. *Lawrence v. Bank of Am., N.A.,* 455 Fed.Appx. 904, 907 (11th Cir.2012). TD Bank argues that Plaintiffs allegations of knowledge equate to (essentially) routine banking transactions. *See Lamm v. State St. Bank & Trust,* 749 F.3d 938, 950 (11th Cir.2014).

Such transactions do not amount to actual knowledge of fraud. *See Perlman,* 559 Fed.Appx. at 993 ("[M]erely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly.*"). While it is true that some of Plaintiffs' allegations concern normal, routine banking services, Plaintiffs' allegations do encompass other activity. The crux of Plaintiffs' pertinent allegations, in the context of the aforementioned knowledge element, is that TD Bank had knowledge of the fraudulent transactions in this case because TD Bank had an agreement with the New Jersey bar to report overdrafts of attorney trust accounts. Plaintiffs' allegations on this point are partially set forth below:

TD Bank knowingly permitted Peck to overdraw the Trust Accounts by honoring withdrawals and transfers from Trust Accounts with insufficient funds. TD Bank knew that such conduct was in violation of the New Jersey rules governing attorney trust accounts and detrimental to Plaintiffs and the Class members. **TD Bank also knew it was a party to an agreement requiring that it immediately report such activities to the New Jersey Bar Office of Attorney Ethics.** Nonetheless, despite its obligation to do so under its agreements and New Jersey law, TD Bank failed to timely file all appropriate reports with the New Jersey Office of Attorney Ethics.

DE 37 ¶ 85. Plaintiffs' implicit contention is therefore that (i) because TD Bank had an obligation to report overdraws of attorney trust accounts to the New Jersey bar, (ii) TD Bank had systems in place to detect such overdraws for reporting purposes and (iii) due to such systems TD Bank had

actual knowledge of the overdraws.[3] The Court finds this contention to be plausible. Accordingly, the Court finds that Plaintiffs' allegations of actual knowledge satisfy the *Twombly* motion to dismiss standard.[4]

■■■ TD Bank next argues that Plaintiffs have failed to plead TD Bank gave substantial assistance to the other Defendants in this case that have been accused of fraud. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Lesti v. Wells Fargo Bank, N.A.,* 960 F.Supp.2d 1311, 1325 (M.D.Fla.2013). To allege substantial assistance, Plaintiffs partially rely upon the following:

> With such knowledge, TD Bank knowingly participated, aided and abetted, and otherwise substantially assisted to bring about Peck's breaches of fiduciary obligations. Defendant TD Bank rendered substantial and knowing assistance to Peck in her breach of fiduciary duties by, among other things, (a) providing banking services to the life settlement offering, (b) establishing an IOLTA trust account for Peck, (c) disregarding overtly suspicious activity indicative of misconduct; commingling the premium escrow accounts and using new investor funds set aside to pay premiums on new investors' specific policies to pay premiums on policies assigned to earlier investors, (d) failing to report incidents of insufficient funds in the Trust Accounts to the New Jersey Office of Attorney Ethics, (e) vouching for Peck in letters, while omitting that Peck was mishandling investor funds, and (f) sitting silently while other Defendants made numerous false and misleading material omissions related to investments made by Plaintiffs and the Class, knowing that Plaintiffs and the Class would rely on these material omissions to their detriment.

DE 37 ¶ 211.

Clearly, Plaintiffs have alleged TD Bank provided substantial assistance to Defendant Peck. TD Bank essentially argues that the above-referenced allegations are insufficient given the factual support used to justify and substantiate them. TD Bank's argument is persuasive to the extent that some of Plaintiffs' allegations reference normal banking activity, such as providing banking services and opening an account for Defendant Peck. The allegations more relevant to substantial assistance are, however, *inter alia,* that TD Bank disregarded overtly suspicious activity, failed to report overdraws to the New Jersey bar, and providing letters that "vouched" for Defendant Peck during the course of Peck's alleged fraud.

In the context of the present motion to dismiss Plaintiffs need only allege such specifics so as to make their claim for relief plausible. Plaintiffs argue that the

---

**3.** It is unclear how many overdraws are alleged to have occurred. *Compare* DE 37 ¶¶ 136–38 (alleging multiple overdrafts), *with* DE 37 ¶ 55 (at least one account allegedly overdrawn). Construing all inferences in favor of Plaintiffs, the Court assumes multiple overdraws are alleged. *See Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1325 (11th Cir.2012).

**4.** The Court recognizes the underlying difference between knowledge of an overdraw and knowledge of fraudulent activity. The Court must construe all inferences in favor of Plaintiffs, however, and the Court therefore assumes Plaintiffs have alleged multiple overdraws—which, in the context of an attorney trust account, give rise to a strong inference of wrongdoing. *See* footnote 3; *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 289 (2d Cir. 2006) ("[T]he fact that [an attorney] [is] overdrawing his fiduciary accounts constitute[s] strong evidence that he [i]s, at the very mishandling his clients' funds.").

vouching letters are routine, that reporting obligations to the New Jersey bar have no bearing on Plaintiffs, and that Defendant Peck's alleged activity was not so overtly suspicious that TD Bank consciously chose to conceal it. Plaintiffs' allegations, however, must be considered in light of the alleged actual knowledge of TD Bank. The Court therefore views Plaintiffs' allegations of substantial assistance in light of TD Bank's actual knowledge of Defendant Peck's overdraws, as well as other matters of knowledge alleged by Plaintiffs.

The Court is sensitive to TD Bank's arguments, and the Court recognizes that case law finding banks liable to third party non-customers necessarily sets a high standard for liability to be found. *E.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir.2006). The Court further recognizes that the facts of many cases where bank liability was upheld involved facts that would appear to be more egregious than the facts of the instant case. *See id.* Nonetheless, TD Bank's arguments on these points ultimately go to the *sufficiency* of evidence. The Court finds these arguments to be premature after reviewing Plaintiffs' allegations in their entirety. Plaintiffs have alleged actual knowledge, they have alleged substantial assistance, and they have provided sufficient specificity to meet the *Twombly* standard. Accordingly, the Court finds that Count 5 survives TD Bank's motion to dismiss.

**B. Count 10, Negligence, and Count 11, Negligent Misrepresentation.**

TD Bank argues that Count 10 and Count 11 fail on two separate points: (1) Plaintiffs cannot show that TD Bank owed a duty to Plaintiffs and (2) Plaintiffs have not alleged a statement that TD Bank made that Plaintiffs relied upon.

 (1) *TD Bank's Duty to Plaintiffs.* As a general rule, banks have no duty to monitor fiduciary accounts to safeguard funds from misappropriation; therefore, to establish that TD Bank owed a duty to Plaintiffs, Plaintiffs principally rely upon an exception to the general rule discussed and delineated in *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 287 (2d Cir.2006). Under *Lerner*, a bank may owe a duty to third-party non customers if the bank is presented with clear evidence indicating funds are being mishandled by a fiduciary. *Lerner*, 459 F.3d at 295. That duty arises when circumstances which reasonably support the sole inference that a misappropriation is intended are made known to the bank. *See id.* at 287 (quoting *Bischoff ex rel. Schneider v. Yorkville Bank*, 218 N.Y. 106, 112 N.E. 759, 760 (1916)). TD Bank argues that Florida law does not recognize *Lerner* and cites to a battery of cases to support its proposition. *See* DE 44 at p. 12–13.

After reviewing the battery of cases cited by TD Bank, the Court finds those cases to be unpersuasive as applied to the specifics of this case. For example, TD Bank cites to a bankruptcy case, *In re Meridian Asset Management, Inc.*, but the relevant portion of that case addressed whether a specially-styled bank account imparted a duty of monitoring upon a bank—that is not the issue here. 296 B.R. 243 (Bankr.N.D.Fla.2003). *In re Meridian* cited to a 1968 Florida Supreme Court case, *Home Federal Savings and Loan Association v. Emile*, but the relevant portion of that case similarly held that trust accounts, merely because they were trust accounts, do not impose a duty upon a bank—also not the issue here. 216 So.2d 443, 446 (Fla.1968). TD Bank further cites to *Grillo v. City National Bank*, but that case focused on the rights of a depositor to withdraw her *own* funds in accordance with a deposit agreement. 354 So.2d 959 (Fla.Dist.Ct.App.1978). In sum-

mary, TD Bank's authority essentially restates the general proposition that a bank has no duty to actively monitor accounts for wrongdoing. The Florida cases cited by TD Bank do not address a bank's duties in the context when a bank has *actual knowledge* of a fiduciary's misappropriation of funds nor does TD Bank cite to authority that supports the proposition that *Lerner* is incompatible with Florida law.

Ultimately, it is the well-pled alleged existence of actual knowledge in this case that the Court finds dispositive.[5] Florida courts have applied the general exception espoused in *Lerner* in their analysis. *See Perlman v. Wells Fargo Bank, N.A.*, 559 Fed.Appx. 988, 994 (11th Cir. 2014) (citing *Lerner* and applying its holding); *Wiand v. Wells Fargo Bank, N.A.*, 938 F.Supp.2d 1238, 1247 (M.D. Fla.2013) (citing *Lerner* and applying its holding). The Fifth Circuit Court of Appeals has also considered and applied the *Lerner* exception. *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 234 (5th Cir.2010). Therefore, because *Lerner* has been cited and used in Florida, at the Eleventh Circuit, and at the Fifth Circuit, in addition to its usage in the Second Circuit, together with the fact that the Court has not been presented with a persuasive argument that *Lerner* is inapposite or otherwise unaccepted under Florida law,[6] the Court finds that Plaintiffs have properly alleged TD Bank owed them a duty.

(2) *Plaintiffs' Reliance upon a Statement of TD Bank.*

Plaintiffs' Count 11 relies upon the vouching letters authored by TD Bank to establish a negligent misrepresentation. TD Bank argues that Plaintiffs' negligent misrepresentation claim fails because the letters were accurate and because Plaintiffs have not alleged they relied upon the letters. Both of these contentions by TD Bank are incorrect. Plaintiffs have pled that the letters were inaccurate:

> The Hume P.A. compliance letter, the Peck Annual Report and the two TD Bank vouching letters were forwarded to Quality Investments for publication to investors on the Quality Investment website portal. Based on events which occurred contemporaneous with and prior to the issuance of these materials, **the statements in these materials were false.**

DE 37 ¶ 107. Plaintiffs have also alleged reliance:

> The Class relied heavily upon TD Bank's involvement and actions. TD Bank's participation was a substantial basis for their confidence in the legitimacy of the transactions and the safety of their funds.

*Id.* at ¶ 83. Accordingly, for the reasons discussed above, Count 10 and Count 11 survive TD Bank's Motion to Dismiss.

**C. Count 20, Violation of New Jersey 3B: 14–55.**

TD Bank raises two objections to Count 20. First, TD bank argues Count 20 fails as Florida law applies to this claim, not New Jersey law. As previously discussed, the Court has concluded that New Jersey law applies to Count 20 and, as a

---

**5.** It is for this reason, *inter alia,* that the Court previously determined that the asserted conflict of law between New Jersey law and Florida law was a false conflict.

**6.** Notably, at the hearing on this matter, counsel for TD Bank acknowledged that it

was possible, under Florida law, for a bank to owe a duty to non-customers when the bank was in possession of actual knowledge of fraud; counsel's objections were based upon the *sufficiency* of the factual allegations *in* this case, not the legal impossibility.

result, Plaintiffs' argument on this point is rejected. Plaintiffs' second argument is that a private cause of action cannot be based upon the statute Count 20 is premised upon: New Jersey 3B: 14–55. This contention by TD Bank is incorrect—a private cause of action is cognizable under the statute. *New Jersey Title Ins. Co. v. Caputo,* 163 N.J. 143, 748 A.2d 507, 514 (2000). Accordingly, Count 20 survives TD Bank's Motion to Dismiss.

### D. Plaintiffs' Class Allegations.

TD Bank argues that Plaintiffs' class allegations fail as a matter of law. The basis for TD Bank's argument is that a class may only be certified if the named representatives will be able to fairly represent the interests of the class adequately and fairly. Fed.R.Civ.P. 23(a)(4). Plaintiffs cannot adequately represent the class, TD Bank argues, because some members of class, pursuant to the Complaint, benefitted from the alleged Ponzi scheme and, as a result, Plaintiffs' interests are adverse to those members. DE 37 at ¶ 170. Construing all inferences in favor of Plaintiffs, the Court does not necessarily agree with TD Bank's interpretation of the Complaint—class members who originally benefitted from an early above-market return in a Ponzi scheme may have reinvested and lost their initial returns. Moreover, just because some members of the class benefitted from the alleged Ponzi scheme does not necessarily mean that their interests are adverse to Plaintiffs' interests, those members would merely expect to receive no damages. *See In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 523 (S.D.N.Y.1996) ("Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust violation has caused widespread injury to the class."). Ultimately, however, the Court finds TD Bank's argu-

ment on this point to be premature. TD Bank may re-raise this argument at the class certification stage.

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** that TD Bank's Motion to Dismiss [DE 44] is **DENIED.**